EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| DLJ Mortgage Capital, Inc.<br><br>Peticionario<br><br>v.<br><br>Federico Alberto García Ramos,<br>t/c/c Federico A. Ramos García<br><br>Recurridos | Certificación<br><br>2021 TSPR 66<br><br>206 DPR \_\_\_\_ |

Número del Caso: CT-2020-9

Fecha: 14 de mayo de 2021

Abogados de la parte peticionaria:

     Lcda. Irmarie Rivera Miranda
     Lcdo. Eyck O. Lugo Rivera
     Lcda. Vilmarys Mel Quiñones Cintrón

Abogados de la parte recurrida:

     Lcda. Monsita Lecaroz Arribas
     Lcda. Rosana Moreno Rodríguez

Materia: Derecho Registral Inmobiliario- El principio de tracto sucesivo es un prerrequisito para la validez de la inscripción de una hipoteca en virtud de la Ley para agilizar el Registro de la Propiedad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

DLJ Mortgage Capital, Inc.

     Peticionario

           v.

Federico Alberto García Ramos,
t/c/c Federico A. Ramos García

     Recurridos

CT-2020-0009    *Certificación
Interjurisdiccional*

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 14 de mayo de 2021.

En esta ocasión, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico -- por vía del presente recurso de certificación interjurisdiccional -- nos solicita que precisemos si el principio hipotecario de tracto sucesivo es un prerrequisito necesario para concluir que la inscripción automática de una hipoteca, en virtud de la Ley para Agilizar el Registro de la Propiedad, *infra*, es válida.

De otra parte, nos plantea como interrogante si la inscripción automática de una hipoteca -- conforme el estatuto de referencia -- se ve afectada cuando el dueño de la propiedad no corrige ciertas deficiencias notificadas por el Registrador de

la Propiedad, resultando en la no inscripción de su título propietario.[1]

Tras un examen minucioso de los estatutos y normativa aplicable, y luego de haber expedido el recurso ante nos, resolvemos que el ordenamiento jurídico puertorriqueño exige el cumplimiento con el principio de tracto sucesivo, como condición para la validez de la inscripción de una hipoteca en virtud de la Ley para Agilizar el Registro de la Propiedad, *infra*. Asimismo, concluimos que el hecho de que el titular no haya corregido las deficiencias notificadas, no cambia el hecho de que -- en el presente caso -- se rebatió la presunción de corrección instituida por el precitado estatuto. Nos explicamos. Veamos.

I.

Tras la muerte del señor Catalino Ramos Díaz, y a raíz de determinado procedimiento de declaratoria de herederos,[2] el señor Federico Alberto Ramos García (en adelante, "señor Ramos García") se convirtió en dueño parcial -- junto a su madre, Nydia Elisa García Monge (en adelante, "señora García

---

[1] Las preguntas, según formuladas por la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante, "Tribunal de Distrito"), son: 1) "Whether the principle of successive claim of ownership ('tracto') that requires the debtor to be listed as a registered owner of its property is a pre-condition to consider a mortgage deed validly recorded by operation of Law 216?"; 2) "Whether a recordation validly made under Law 216 is affected when the owner of the property participated in the events that led to non-recordation of its vesting deed at the Registry of Property by not correcting the defects notified by the Registrar?". Véase, *Recurso de certificación*, pág. 2.

[2] Véase, Caso Núm. FJV2003-09402, celebrado ante el Tribunal de Primera Instancia.

Monge"), y su hermana, Rosa Amarilis Ramos García (en adelante, "señora Ramos García") -- de cierta propiedad sita en el Municipio de Trujillo Alto.[3]

Tiempo después, mediante la Escritura Núm. 1 sobre Donación de Participaciones Hereditarias (en adelante, "Escritura Núm. 1 de Donación"), otorgada el 16 de enero de 2006, las señoras García Monge y Ramos García donaron su participación en la Finca Núm. 4074 al señor Ramos García. Como consecuencia, este último se convirtió en el único dueño de la propiedad antes mencionada.

Así las cosas, en virtud de su titularidad registral, y mediante la Escritura Núm. 140 (en adelante, "Escritura Núm. 140 de Hipoteca" o "Escritura Núm. 140") por la suma de ciento veinte mil dólares ($120,000.00), el 14 de marzo de 2008 el señor Ramos García constituyó una hipoteca a favor

---

[3] Dicho inmueble tiene la siguiente descripción registral:

> URBANA: Solar en el Barrio Cuevas del Municipio de Trujillo Alto, Puerto Rico, con una cabida superficial de veintiún (21) centésimas de cuerda equivalente a ochosientos diecisiete punto cincuenta y dos (817.52) metros cuadrados. En lindes por el Norte, es trece punto sesenta y seis (13.66) metros con terrenos de Juan Feliciano; por el Sur, en catorce punto treinta y nueve (14.39) metros con carretera estatal número 175; por el Este, en cincuenta y nueve punto veinte (59.20) metros con terrenos de Aguedo Adorno y por el Oeste, en cincuenta y ocho punto veintinueve metros (58.29) con terrenos de Cándido Arroyo (en adelante, "Finca Núm. 4074").

de Doral Mortgage, LLC.[4] Ésta fue presentada ante el Registro de la Propiedad el 3 de junio de 2009.[5]

Entretanto, tras la presentación de la Escritura Núm. 1 de Donación ante el Registro de la Propiedad, el 14 de abril de 2008 el Registrador de la Propiedad notificó ciertas deficiencias en dicho documento.[6] Esta notificación caducó el 16 de junio de 2008 sin que se tomara alguna acción al respecto.

De forma similar, en la misma fecha, a saber, el 14 de abril de 2008, el Registrador de la Propiedad notificó determinadas deficiencias en la Declaratoria de Herederos que dio paso a la donación.[7] Empero, tal notificación también caducó el 16 de junio de 2008 sin que se efectuara una corrección.

Ahora bien, en el interín, la Asamblea Legislativa de Puerto Rico aprobó la Ley para Agilizar el Registro de la Propiedad, *infra*, en aras de promulgar la inscripción

---

[4] En la misma fecha, es decir, el 14 de marzo de 2008, el señor Ramos García constituyó una segunda hipoteca, también a favor de Doral Bank, LLC, por veintidós mil quinientos dólares ($22,500.00). Dicho negocio quedó plasmado en la Escritura Núm. 141 (en adelante, "Escritura Núm. 141 de Hipoteca"), la cual fue presentada el 3 de junio de 2009 ante el Registro de la Propiedad.

[5] **Esta fue la segunda vez que se presentó la escritura de referencia ante el Registro de la Propiedad**. Ello, ya que la misma fue **originalmente presentada el 8 de abril de 2008**, pero fue **notificada con deficiencias el 14 de abril de 2008**. De forma correspondiente, dicho documento **caducó el 16 de junio de 2008**.

[6] En específico, señaló deficiencias en el relevo otorgado por el Departamento de Hacienda de Puerto Rico, es decir, la Certificación de Cancelación de Gravamen.

[7] Del mismo modo el error señalado estaba relacionado al relevo otorgado por el Departamento de Hacienda de Puerto Rico, es decir, la Certificación de Cancelación de Gravamen.

automática de ciertos documentos presentados ante el Registro de la Propiedad. En virtud de la *Ley para Agilizar el Registro de la Propiedad*, *infra*, ambas hipotecas quedaron inscritas, mediante el asiento abreviado extendido el 25 de febrero de 2015.

Más adelante, el 1 de julio de 2014 para ser específicos, el señor Ramos García se acogió a las protecciones del Capítulo 13 del Código de Quiebras, 11 USC sec. 1301.[8] Como parte de dicho procedimiento, el 14 de diciembre de 2015 el señor Ramos García instó un proceso adversativo en contra de DLJ Mortgage Capital, Inc. (en adelante, "DLJ Mortgage"), sucesor de Doral Mortgage, LLC, quien adquirió el crédito de la hipoteca constituida por la Escritura Núm. 140 (en adelante, "DLJ Mortgage").[9]

En particular, el señor Ramos García impugnó la validez de la inscripción de la hipoteca constituida mediante la Escritura Núm. 140, por entender que la misma fue errónea.[10] Éste adujo que no era el dueño registral de la Finca Núm. 4074 -- sobre la cual se constituyó la referida hipoteca -- toda vez que la Escritura Núm. 1 de Donación había caducado, por lo que la Escritura Núm. 140 de Hipoteca, inscrita en

---

[8] Dicho caso fue asignado el alfanumérico 14-05463(BKT).

[9] Ello, bajo el epígrafe *Federico A. Ramos García v. DLJ Mortgage, Inc.*, Adv. No. 15-00297 (BKT).

[10] Banco Popular de Puerto Rico -- quien sustituyó a Doral Mortgage, LLC -- era acreedor de la hipoteca constituida en virtud de la Escritura Núm. 141. Luego del proceso adversativo, en julio de 2016, Banco Popular de Puerto Rico y el señor Ramos García llegaron a un acuerdo transaccional, por lo que dicho asunto no está ante nuestra consideración.

virtud de la Ley para Agilizar el Registro de la Propiedad, *infra*, era inválida por falta de tracto sucesivo.[11]

En ese sentido, el señor Ramos García argumentó que la Ley para Agilizar el Registro de la Propiedad, *infra*, estableció una presunción rebatible de corrección de los documentos inscritos en base de dicho estatuto. No obstante, señaló que dicha ley permitió la rectificación de errores en los instrumentos inscritos en virtud de la misma, y que -- en este caso -- la falta de tracto sucesivo rebatía la presunción de corrección. De forma que, por medio de la acción adversativa que incoó ante el Tribunal de Quiebras, se estaba haciendo la gestión de corrección.

Así pues, el señor Ramos García solicitó que dicho foro ordenara al Registrador de la Propiedad que eliminara la hipoteca constituida por medio de la Escritura Núm. 140 de Hipoteca; que declarara la deuda de DLJ Mortgage como una no asegurada; y que ordenara que se le reembolsara al síndico de quiebras todo pago hecho a favor de la hipoteca antes aludida y con posteridad a la fecha de presentación de la petición de quiebra.

Tras varios incidentes procesales no necesarios aquí pormenorizar, el 20 de noviembre de 2017 las partes presentaron un *Joint Motion Submitting Factual Stipulations*, donde el señor Ramos García aceptó -- entre otras cosas -- que, aproximadamente tres (3) años después de que se otorgara

---

[11] En esa ocasión, el señor Ramos García hizo alusión al Art. 57 de la Ley Hipotecaria y del Registro de la Propiedad, *infra*.

la Escritura Núm. 140 de Hipoteca, cierto notario le comunicó que el Registrador de la Propiedad había notificado determinados defectos en la Escritura Núm. 1 de Donación; y que se le instruyó a rectificar los errores señalados, pero que no lo hizo. De la misma forma, se estipuló el hecho de que la Finca Núm. 4074 constaba inscrita a favor de los progenitores del señor Ramos García -- incluyendo su padre fenecido -- y que la propiedad de referencia se encuentra en posesión de su madre, la señora García Monge.

Posteriormente, el 14 de marzo de 2018 DLJ Mortgage presentó ante el Tribunal de Quiebras una solicitud de sentencia sumaria. En apretada síntesis, la corporación de referencia adujo que la Escritura Núm. 140 de Hipoteca había sido inscrita de acuerdo a la normativa vigente y que el señor Ramos García estaba interpretando incorrectamente los postulados de la Ley para Agilizar el Registro de la Propiedad, *infra*. Asimismo, DLJ Mortgage señaló que las razones por las cuales el señor Ramos García no constaba como el dueño registral de la Finca Núm. 4074 eran atribuibles solamente a éste. Por tanto, además de su negligencia en las gestiones para corregir las deficiencias notificadas, DLJ Mortgage aduce que el señor Ramos García tampoco inició un pleito independiente para corregir o anular -- por medio de un mandato judicial -- la constancia de la hipoteca en el Registro de la Propiedad.[12] En fin, DLJ

---

[12] Sobre este asunto, DLJ Mortgage señaló que el señor Ramos García decidió levantar el planteamiento antes discutido en el Tribunal de

Mortgage sostuvo que la Ley para Agilizar el Registro de la Propiedad, *infra*, produce efectos *erga omnes* en cuanto a los derechos reales inscritos en el Registro de la Propiedad y fue correctamente aplicada en el caso de epígrafe.

En respuesta, el 12 de abril de 2018 el señor Ramos García se opuso al petitorio de DLJ Mortgage y solicitó que, en vez, se dictara sentencia sumaria a su favor. En su *Reply to Defendant's Request for Summary Judgment*, el señor Ramos García reiteró los argumentos planteados previamente ante el Tribunal de Quiebras.[13] Además, sostuvo que -- contrario a lo intimado por DLJ Mortgage -- éstos conocían de los defectos en la Declaratoria de Herederos y la Escritura Núm. 1 de Donación. El señor Ramos García destacó que los escritos antes mencionados fueron notificados con deficiencia el 14 de abril de 2008 y caducaron el 16 de junio de 2008. Por otro lado, la escritura de hipoteca en controversia fue primero presentada el 8 de abril de 2008, pero tuvo que ser presentada una segunda vez el 3 de junio de 2009. Es decir, fue presentada nuevamente ante el Registro de la Propiedad luego de que caducara la Escritura Núm. 1 de Donación y la correspondiente Declaratoria de Herederos. En ese sentido,

---

Quiebras, "where the automatic stay provisions of Section 362 prevent DLJ from seeking any such relief from Plaintiff". Véase, *Apéndice*, pág. 45. Es decir, "a forum which impedes DLJ from availing itself of the state law remedies which could have compelled Plaintiff to correct the Registry defects created by Plaintiff himself". *Íd.*

[13] En esta ocasión, el señor Ramos García fundamentó su petitorio en el Art. 17 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, *infra*.

el señor Ramos García afirmó que el acreedor debió hacer las diligencias necesarias para confirmar que la persona que otorga la hipoteca es la misma que aparece como dueño titular en el Registro de la Propiedad.

Tras evaluar los argumentos de las partes y examinar el derecho aplicable, el 4 de junio de 2019 el Tribunal de Quiebras emitió una *Opinion and Order*. En ella, concluyó que no se había cumplido con el requisito de tracto sucesivo, según exigido por la Ley Hipotecaria y del Registro de la Propiedad, *infra*. Por otro lado, enfatizó que la Ley para Agilizar el Registro de la Propiedad, *infra*, no daba rienda suelta (*free pass*) para que todos los documentos presentados de forma errónea se inscribieran y se mantuvieran inscritos.[14] De manera que, si alguna inscripción se llevó a cabo de forma incorrecta, debía ser subsanada según lo dispuesto en el precitado estatuto. Sobre la controversia de epígrafe, el Tribunal de Quiebras adujo que dicha corrección se estaba llevando a cabo mediante intervención judicial.

En virtud de lo anterior, el Tribunal de Quiebras determinó que procedía, entonces, proveer no ha lugar a la solicitud de sentencia sumaria de DLJ Mortgage, declarar no asegurada la acreencia de dicha corporación y emitir una orden para que el Registrador de la Propiedad cancelara la

---

[14] El Tribunal de Quiebras fundamentó su determinación, parcialmente, en lo sentenciado en *In re Ramos*, 493 B.R. 355 (Bankr. D.P.R. 2013).

hipoteca en controversia.[15] Dicha determinación fue oportunamente notificada a todas las partes del litigio.

Inconforme con dicho proceder, DLJ Mortgage recurrió ante la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, y planteó que si se permitía que prevaleciera la determinación del Tribunal de Quiebras, se generaría en nuestra jurisdicción cierta incertidumbre sobre todas las transacciones hechas en virtud de la Ley para Agilizar el Registro de la Propiedad, *infra*.[16] En consideración de las controversias bajo su estudio, el 30 de marzo de 2020 la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, por voz del Juez Pedro A. Delgado Hernández, decide presentar el recurso de certificación interjurisdiccional de referencia ante este Tribunal, recurso que decidimos acoger el 30 de octubre de 2020.

En particular, y como ya mencionamos, nos solicitan certificar dos (2) preguntas, a saber: 1) "Whether the principle of successive claim of ownership ('tracto') that requires the debtor to be listed as a registered owner of its property is a pre-condition to consider a mortgage deed validly recorded by operation of Law 216?"; 2) "Whether a recordation validly made under Law 216 is affected when the

---

[15] Así, señaló que "pursuant to Puerto Rico Law, DLJ does not have a valid lien and consequently does not have a secured claim over Debtor's Property". Véase, *Apéndice*, pág. 83.

[16] Véase, *DLJ Mortgage, Inc. v. Federico A. Ramos García*, 19-CV-01609 (PAD).

owner of the property participated in the events that led to non-recordation of its vesting deed at the Registry of Property by not correcting the defects notified by the Registrar?".

Enterado de lo anterior, DLJ Mortgage comparece ante nos mediante un *Alegato sobre certificación interjurisdiccional*.[17] En esencia, en cuanto a la primera pregunta planteada por la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, a grandes rasgos, arguye que "no es necesario que exista tracto para que una inscripción por virtud de la Ley 216-2010 sea válida". *Alegato* de DLJ Mortgage, pág. 13.

En cuanto a la segunda interrogante planteada por la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, DLJ Mortgage destaca que el señor Ramos García se cruzó de brazos, tras ser notificado de los defectos de la Escritura Núm. 1 de Donación. Cónsono con esto, DLJ Mortgage asevera que este Tribunal debe determinar que "ninguna parte puede ir contra sus propios actos e impugnar la validez de instrumentos públicos inscritos por virtud de la Ley 216-2010, amparándose de problemas registrales ocasionados por la propia parte que ahora pretende impugnar dicha inscripción".

---

[17] DLJ Mortgage también presentó una *Moción solicitando argumentación oral en apoyo de Alegato sobre certificación interjurisdiccional*. En virtud de dicho petitorio, DLJ Mortgage solicita una argumentación oral en el caso de marras. Ello, ya que -- a su juicio -- la presente controversia está revestida de gran interés público.

De otra parte, el 6 de noviembre de 2020 compareció ante nos el señor Ramos García mediante una *Moción sometiendo alegato de parte apelada […]*. En ésta, y en apretada síntesis, alega que por razón del principio de tracto sucesivo -- contenido en la Ley Hipotecaria y del Registro de la Propiedad, *infra*, al igual que la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, *infra* -- la escritura de hipoteca en controversia no debió ser inscrita mediante la Ley para Agilizar el Registro de la Propiedad, *infra*. Ello, ya que la propiedad inmueble aquí en controversia no está a nombre del señor Ramos García.

En ese sentido, y a juicio del señor Ramos García, la Ley para Agilizar el Registro de la Propiedad, *infra*, dispone un mecanismo para corregir ese tipo de error. Éste señala que, si bien el estatuto de referencia establece una presunción de corrección de las inscripciones hechas a su amparo, dicha presunción puede ser rebatida. De forma que, al instar un proceso adversativo en el caso de quiebras, obtuvo la intervención judicial necesaria para corregir la inscripción errónea.

Asimismo, el señor Ramos García recalca que el antecesor de DLJ Mortgage -- entiéndase, Doral Mortgage, LLC -- conocía del problema del tracto sucesivo. Siendo ello así, indica que, en todo caso, se puede atribuir el problema de inscripción al acreedor hipotecario.

A la luz de lo antes reseñado, el señor García Ramos nos solicita que: 1) con relación a la primera pregunta, concluyamos que las inscripciones efectuadas a la luz de la Ley para Agilizar el Registro de la Propiedad, *infra*, gozan de una presunción de corrección, que es susceptible a ser rebatida mediante intervención judicial; y 2) que el hecho de que el señor Ramos García haya aceptado que tuvo conocimiento de los defectos notificados por el Registrador de la Propiedad sobre la Escritura Núm. 1 de Donación no altera el estado de derecho de la inscripción de la Escritura Núm. 140 de Hipoteca.

Trabadas así las controversias, expedimos el recurso ante nos, y con el beneficio de la comparecencia de todas las partes con interés en el litigio, procedemos a exponer la normativa aplicable a las mismas.

II.

Como es sabido, el recurso de certificación interjurisdiccional es el "instrumento procesal adecuado que permite a un tribunal someter preguntas, para su contestación definitiva, a otro tribunal de jurisdicción distinta, sobre cuestiones dudosas que se refieren al Derecho de esa jurisdicción". *González Cabán v. JR Seafood*, 199 DPR 234, 239 (2017). Véase, *Martínez Marrero v. González Droz*, 180 DPR 579 (2011); *Guzmán v. Calderón*, 164 DPR 220 (2005); R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 574.

De esta forma, se posibilita que un tribunal federal o de un estado de los Estados Unidos certifique -- ante esta Curia --  un "asunto judicial en el que estén implicados cuestiones de derecho puertorriqueño que puedan determinar el resultado del mismo y respecto al cual, en la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este Tribunal". Art. 3.002 de la Ley de la Judicatura de Puerto Rico, Ley Núm. 201-2003, 4 LPRA sec. 24(s)(g). Véase, también, Regla 25(a) del Reglamento del Tribunal Supremo de Puerto Rico, 4 LPRA Ap. XXI-B; Regla 52.2(d) de las Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.2(d).

A esos efectos, hemos reiterado que la certificación interjurisdiccional es un método directo y económico para que el foro federal obtenga una interpretación del derecho estatal. *Martínez Marrero v. González Droz*, *supra*, pág. 585; *Medina & Medina v. Country Pride Foods*, 122 DPR 172, 181 (1988); *Pan Ame. Comp. Corp. v. Data Gen. Corp*, 112 DPR 780, 785 (1982). Igualmente, este Tribunal ha sentenciado que -- mediante el recurso de referencia -- se respeta la función de los tribunales estatales de interpretar el derecho de sus respectivas jurisdicciones. *Íd.*

Ahora bien, es menester señalar que la expedición de dicho recurso es enteramente discrecional. *González Cabán v. JR Seafood*, *supra*, pág. 240; *Watchtower Bible v. Mun. Dorado I*, 192 DPR 73, 79 (2014); *Guzmán v. Calderón*, *supra*, pág. 228. Asimismo, y conforme a lo antes expuesto, las

contestaciones de las preguntas que son certificadas tienen el efecto de cosa juzgada, por lo que obligan a las partes en cualquier procedimiento ulterior. *González Cabán v. JR Seafood*, *supra*, pág. 240; *Watchtower Bible v. Mun. Dorado I*, *supra*; *Guzmán v. Calderón*, *supra*, pág. 227.

III.

Establecido lo anterior, y por ser en extremo pertinente para la correcta disposición de las interrogantes presentadas ante nos, es conveniente señalar aquí que en nuestra jurisdicción rige un sistema registral declarativo con eficacia convalidante. L. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3era ed. rev., San Juan, Ed. Jurídica Editores, 2012, págs. 32-33. En particular, el sistema de referencia se distingue por la voluntariedad de la inscripción de los documentos, así como el requisito de que éstos sean calificados antes de acceder al Registro de la Propiedad.[18] Rivera Rivera, *op. cit.*, pág. 33. Siendo ello así, y según plasmado en la ahora derogada Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, 30 LPRA sec. 2001 *et seq.* (en adelante, "Ley Hipotecaria"), -- la cual estaba vigente al momento en que se otorgaron los instrumentos aquí bajo estudio -- el Registro de la Propiedad:

> [T]iene por objeto la registración de los actos y contratos relativos a los bienes inmuebles mediante un sistema de publicidad de títulos que

---

[18] Para más información sobre los orígenes de nuestro sistema registral, véase L. Mojica Sandoz, *Derecho Hipotecario de Puerto Rico* (L. Abraham y Patricia Abraham, eds.), EE.UU., Publicaciones JTS, 2004.

contienen las adquisiciones, modificaciones y extinciones del dominio y demás derechos reales sobre dichos bienes, y de los derechos anotables sobre los mismos, y de las resoluciones judiciales que afecten la capacidad civil de los titulares. Art. 7 de la Ley Hipotecaria, 30 LPRA sec. 2051.

Como parte de dicho sistema, se incorporaron en nuestro ordenamiento principios claves de derecho registral inmobiliario, incluyendo el principio de tracto sucesivo. Éste último exige "mantener el enlace o conexión de las adquisiciones por el orden regular de los titulares registrales sucesivos, a base de formar todos los actos adquisitivos inscritos una continuidad perfecta […]". R.M. Roca Sastre y otros, *Derecho hipotecario*, Barcelona, Ed. Bosch, 2007, T. II, Vol. I, pág. 429. Véase, *Rigores v. Registrador*, 165 DPR 710, 727 (2005). Es decir, que el "transferente de hoy sea el adquirente de ayer y que el titular registral actual sea el transferente de mañana". Roca Sastre y otros, *op. cit.*, 2007, T.II, pág. 429. Véase, *Bechara Fagundo v. Rodríguez Cintrón*, 183 DPR 610, 619 (2011); *Rigores v. Registrador*, *supra*, pág. 727.

En particular, el tracto sucesivo "se exige en todos los componentes de la información registral: finca, titular y derecho. El título a inscribirse debe tener como objeto la misma finca inscrita, haber sido otorgado por el titular inscrito al momento de la calificación, y tratarse del mismo derecho publicado". Mojica Sandoz, *op. cit.*, pág. 161.

El objetivo que se persigue a través del referido principio registral es, en esencia, "que el historial

jurídico de cada finca inmatriculada, respecto de sus sucesivos titulares registrales, aparezca sin saltos ni lagunas". Rivera Rivera, *op. cit.*, pág. 226. Véase, *Bachara Fagundo v. Rodríguez Cintrón*, *supra*, pág. 619; *Pagán Rodríguez v. Registradora*, 177 DPR 522, 534 (2009); *Pino Development Corp. v. Registrador*, 133 DPR 373, 386 (1993).

Empero, es menester precisar que el principio de tracto sucesivo es de carácter formal, "ya que pertenece al proceso, forma o procedimiento de inscripción y se dirige al Registrador [o Registradora]". Roca Sastre y otros, *op. cit.*, 2007, T. II, pág. 435. En otras palabras, el principio al que hacemos alusión debe obedecerse al momento de hacerse la inscripción. Rivera Rivera, *op. cit.*, pág. 227.

Cónsono con lo anterior, el Art. 57 de la Ley Hipotecaria, 30 LPRA sec. 2260 -- vigente al momento en que se otorgaron los instrumentos ante nuestra consideración -- disponía que "[p]ara registrar documentos por los que se declaren, transmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, deberá constar previamente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos".[19] Véase, *Bechara Fagundo v. Rodríguez Cintrón*, *supra*, pág. 619; *Pagán Rodríguez v. Registradora*,

---

[19] Es menester señalar que la actual Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA sec. 6001 *et seq.* (en adelante, "Ley del Registro") tiene una disposición análoga.

*supra*, pág. 535; *Pino Development Corp. v. Registrador*, *supra*, págs. 386-387. De forma que, si la persona que aparece inscrita no es la persona que pretende otorgar la transmisión o gravamen, se debe denegar la inscripción.[20] Art. 57 de la Ley Hipotecaria, 30 LPRA sec. 2260. Véase, *Bechara Fagundo v. Rodríguez Cintrón*, *supra*; *Pagán Rodríguez v. Registradora*, *supra*; *Pino Development Corp. v. Registrador*, *supra*.

Ahora bien, a pesar de que el principio de tracto sucesivo ha quedado firmemente establecido en nuestro ordenamiento, existen instancias donde el mismo se ve interrumpido y debe ser corregido. Sobre el particular, cabe señalar que la reanudación del tracto es una instancia en que el ordenamiento español -- donde originan las bases de nuestro sistema registral -- y el puertorriqueño se pueden distinguir. En específico, si bien el ordenamiento español contempla varias formas de reestablecer el tracto, nuestro ordenamiento "es deficiente en este particular". Rivera Rivera, *op. cit.*, pág. 244. Así, pues, al considerar la corrección del tracto, la Ley Hipotecaria nos remite al Art. 236 y el Art. 246 del mencionado estatuto, 30 LPRA secs. 2761, 2771.

---

[20] Cabe mencionar que el profesor Luis Rafael Rivera Rivera precisa que "el requisito de tracto sucesivo no afecta la facultad para disponer; sólo es exigencia para que pueda inscribir a su favor quien hubiera recibido un derecho del facultado para transmitirlo". Rivera Rivera, *op. cit.*, pág. 227. Véase, también, Roca Sastre y otros, *op. cit.*, 2007, T. II, pág. 436.

A tenor con lo anterior, el Art. 236 de la Ley Hipotecaria, 30 LPRA sec. 2761, contempla la concordancia entre el Registro de la Propiedad y la realidad jurídica extraregistral, la cual se puede lograr, entre otras formas, mediante la reanudación del tracto sucesivo interrumpido. Mientras que el Art. 246 de la Ley Hipotecaria, 30 LPRA sec. 2771, hace referencia a las ocasiones en que un dueño o dueña de una finca inscrita o un derecho real no aparece en el Registro de la Propiedad como su titular. El remedio a esto, según el precitado artículo, es instar una acción ordinaria en contra de los que aparecen en el Registro como los titulares de la finca o el derecho real. *Íd.*

IV.

A.

De otra parte, conviene recordar aquí que, allá para el 27 de diciembre de 2010, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 216-2010, 30 LPRA sec. 1821 *et seq.*, también conocida como Ley para Agilizar el Registro de la Propiedad (en adelante, "Ley Núm. 216-2010"). Mediante dicho estatuto, se pretendía aliviar el atraso en la inscripción de documentos ante el Registro de la Propiedad. Exposición de Motivos de la Ley Núm. 216-2010 (2010 (Parte 2) Leyes de Puerto Rico 1320). Véase, también, *Parras Silvestry v. Ávila Vargas*, 203 DPR 832, 836 (2020); *CRIM v. Registradora*, 193 DPR 943, 948-949 (2015). De tal forma, se buscaba propiciar el desarrollo económico local, asegurar el tráfico jurídico

y preservar los derechos de los ciudadanos. Exposición de Motivos de la Ley Núm. 216-2010, *supra*, págs. 1320-1321.

Ello, ya que, según expone la profesora Ana Cristina Gómez Pérez, en su artículo *El efecto de la Ley Número 216 de 2010 sobre el tráfico económico inmobiliario en Puerto Rico*:

> Los principales efectos del atraso registral en los últimos años los han sufrido la industria bancaria, la cual se encontraba imposibilitada de ejecutar sus garantías hipotecarias no inscritas. Los acreedores tenían que llevar una acción de cobro de dinero y esperar a que se inscribiera la hipoteca para vender en pública subasta la propiedad. Esta espera podía significar en ocasiones meses e incluso años. Lo anterior encarecía el crédito hipotecario por el alto riesgo que implicaba para el acreedor. A.C. Gómez Pérez, *El efecto de la Ley Número 216 de 2010 sobre el tráfico económico inmobiliario en Puerto Rico*, 81 Rev. Jur. UPR 845, 846 (2012).

Cónsono con lo anterior, en la Exposición de Motivos del estatuto de referencia se hizo constar que:

> [D]ado el enorme atraso existente, es necesario adoptar una medida transitoria que, sin menoscabar los principios básicos del derecho hipotecario y conservando la fe pública registral, permita que los esfuerzos de calificación e inscripción de documentos se concentren en aquellos relacionados con el desarrollo económico del país, sin que se afecte la fe pública ni la presunción de los títulos inscritos. (Énfasis suplido) Exposición de Motivos de la Ley Núm. 216-2010, *supra*, pág. 1321.

En esa dirección, y para instrumentar dicha intención legislativa, la Ley Núm. 216-2010, *supra*, permitió la inscripción automática de los documentos presentados ante el Registro de la Propiedad previo al 30 de abril de 2010. Art. 2, Ley Núm. 216-2010, 30 LPRA sec. 1821. Ello, con excepción

de los documentos relacionados a: 1) segregaciones; 2) agrupaciones; 3) agregaciones; 4) expropiaciones; 5) expedientes de dominio; 6) rectificación de cabida o descripción de remanente; 7) constitutivos del Régimen de Propiedad Horizontal; 8) documentos posteriores que surjan de los negocios jurídicos antes mencionados; 9) documentos presentados después de la vigencia del estatuto; 10) documentos notificados, caducados o en proceso de recalificación. *Íd*. Véase, *Parras Silvestry v. Ávila Vargas*, *supra*, págs. 836-837.

Por otro lado, en aras de regular la inscripción de los documentos excluidos, el Art. 5 de la Ley Núm. 216-2010, 30 LPRA sec. 1824, establece que los Registradores de la Propiedad tendrían un plazo improrrogable de dos (2) años -- a partir de la vigencia de la ley de referencia -- para calificar todos los documentos que no hubiesen quedado inscritos en virtud de dicha ley. Además, sobre los documentos presentados a partir del 1 de mayo de 2010, dispuso que debían ser calificados en un término improrrogable de noventa (90) días laborables. *Íd*. Esto, sujeto a la imposición de sanciones disciplinarias al Registrador de la Propiedad cuando se incumpliera con los términos antes señalados. *Íd*.

Finalmente, es preciso señalar que las inscripciones efectuadas en virtud de la Ley Núm. 216-2010 se presumen correctas. Art. 7, Ley Núm. 216-2010, 30 LPRA sec. 1826. No obstante, dicho estatuto dispone que, cualquier corrección

de error, se hará en arreglo con lo expuesto en la Ley Hipotecaria, *supra*, y el *Reglamento general para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad*, Reglamento Núm. 2674, Departamento de Justicia, 9 de julio de 1989, según enmendado (en adelante, "Reglamento Núm. 2674) o cualquier reglamento posterior. *Íd.*

Establecido lo anterior, y en lo relacionado al contenido de este estatuto, precisa mencionar que durante la aprobación del mismo se produjo -- ante la Asamblea Legislativa -- una discusión robusta sobre las consecuencias de su aprobación. A esos fines, participaron varios expertos en derecho registral inmobiliario, incluyendo las licenciadas Gloriana Ruiz Jiménez y María del Socorro Santaella Arguinzoni, ambas Registradoras de la Propiedad jubiladas y profesoras de Derecho Hipotecario. En aquella instancia, señalaron "que el efecto de la 'inscripción automática' e[ra] abolir principios fundamentales del ordenamiento hipotecario vigente […]". G. Lanauze Morales, *Los enigmas de la ley para agilizar el Registro de la Propiedad*, 45 Rev. Jurídica U. Inter. PR 47, 78 (2011). Véase, Informe positivo sobre el P. de la C. 2683, Com. de lo Jurídico y Ética, Cámara de Representantes, 3era Ses. Or., 16ta Asam. Leg., en la pág. 9 (en adelante, "*Informe Positivo*"). Así, por ejemplo, sobre el principio de tracto sucesivo, expresaron que -- como consecuencia de la inscripción automática -- "existe una gran posibilidad de que queden inscritos negocios jurídicos que no guarden una

secuencia ordenada dentro de una misma finca".[21] Lanauze Morales, *supra*, págs. 80-81.

Por su parte, el tratadista Luis Rafael Rivera Rivera se suscribió a lo dicho por las Registradoras antes mencionadas y, además, ofreció sus propias críticas. Sobre el alcance de lo dispuesto en esta ley, el tratadista de referencia sostuvo que, "[u]na vez inscribe, el asiento es intocable y **está bajo la salvaguardia de los tribunales**. El hecho de que la propia Ley Hipotecaria faculte al Registrador para corregir errores en unas circunstancias muy particulares, no significa que pueda adjudicar derechos".[22] (Énfasis suplido) Lanauze Morales, *supra*, pág. 86. Véase,

---

[21] Sobre la presunción de corrección, añadieron:

> El Artículo 7 de la medida establece que se presume que las 'inscripciones automáticas' son correctas. No es aceptable ni concebible que en ningún tribunal se sostenga la presunción de corrección propuesta por la medida. La presunción de corrección actualmente está respaldada por el proceso de calificación. Habiéndose eliminado el proceso de calificación respecto a estos documentos, no ~~puedo~~ [puede] operar la presunción por la mera expresión de la ley, máximo cuando sabemos que los documentos 'inscritos automáticamente' tendrán muchos errores. Lanauze Morales, *supra*, pág. 82.

[22] Valga precisar que, cuando primero se presentó el texto de la ley Núm. 216-2010, *supra*, el Art. 7 rezaba:

> Las inscripciones practicadas en virtud de esta ley, se presumen correctas. Esta presunción de corrección podrá ser revisada por el Registrador de la sección correspondiente, a solicitud de parte interesada, durante dos (2) años contados a partir de la fecha de vigencia de esta ley. El Registrador tendrá la facultad para revisar dichas inscripciones e incluso dejar sin efecto las mismas, de ser éstas contrarias a derecho. P. de la C. 2683 de 12 de mayo de 2010, 3era Ses. Or., 16t Asam. Leg., en la pág. 5.

*Informe Positivo*, *supra*, pág. 11. Y es que no podía ser de otra forma, pues, tal tarea le corresponde a los tribunales.

B.

Ahora bien, en virtud de la Ley Núm. 216-2010, *supra*, el Departamento de Justicia aprobó el Reglamento para la ejecución de la Ley Núm. 216 de 27 de diciembre de 2010 […], Reglamento Núm. 7988, Departamento de Justicia, 4 de febrero de 2011 (en adelante, "Reglamento Núm. 7988"). En éste, se reiteran algunos de los postulados incluidos en la Ley Núm. 216-2010. Así, por ejemplo, se enumeran los documentos que cualifican para la inscripción automática y la metodología para extender los correspondientes asientos. Véase, Arts. 4, 5 y 8, Reglamento Núm. 7988, *supra*.

De la misma manera, se expone que las inscripciones practicadas en virtud de la Ley Núm. 216-2010, *supra*, se presumen correctas. Art. 11, Reglamento Núm. 7988, *supra*. De modo que, cualquier parte afectada por un error en la inscripción de documentos presentados antes del 30 de abril de 2010 y que no quedaron excluidos por la Ley Núm. 216-2010, *supra*, podrían solicitar la corrección de los mismos ante el Registrador de la sección apropiada. Véase, Art. 11.1, Reglamento Núm. 7988, *supra*.

No obstante, el Reglamento Núm. 7988, *supra*, también dispone que el Registrador o Registradora deberá corregir los errores al palio de los Arts. 150 al 154 de la Ley Hipotecaria, 30 LPRA secs. 2501-2505, y los Arts. 141.3 al 141.7, 142.1, 143.1, 143.2 y 144.1 del Reglamento Núm. 2674,

*supra*.[23] En lo pertinente a las correcciones efectuadas por el Registrador o Registradora de la Propiedad, en instancias donde la rectificación pudiese afectar derechos de titulares inscritos, el Art. 151 de la Ley Hipotecaria, 30 LPRA sec. 2502, establece que se exigirá el consentimiento de las partes afectadas o una resolución judicial ordenando la corrección del asiento.

Por otro lado, los Arts. 141.3 al 141.7, 142.1, 143.1, 143.2 y 144.1 del ahora derogado Reglamento Núm. 2674, en esencia, complementan las disposiciones de los incisos de la Ley Hipotecaria anteriormente expuestos.[24] En lo relevante al presente caso, el Art. 142.1 del referido cuerpo reglamentario establece que:

> **Si se hubieren practicado asientos con posterioridad a aquél cuya rectificación se pretende, será requisito indispensable que presten su consentimiento los titulares posteriores compareciendo en instancia firmada y autenticada ante notario, o que sean incluidos como partes en el procedimiento ordinario que se inste con arreglo a lo dispuesto en este Reglamento.** (Énfasis suplido).

Como se puede colegir de lo antes reseñado, las leyes y reglamentos aplicables disponen de forma clara las vías

---

[23] Es necesario aclarar que, a pesar de que el Reglamento Núm. 7988, *supra*, menciona la existencia de un Art. 143.2 en el Reglamento Núm. 2674, *supra*, dicho inciso no existe. No obstante, continuaremos haciendo referencia al mismo, toda vez que el texto del referido cuerpo reglamentario así lo expone.

[24] Por ejemplo, se dispone cómo corregir errores cometidos por los Registradores o Registradoras; cuándo la corrección se debe llevar a cabo una vez ya se ha entregado el título al interesado; contempla aquellas ocasiones en que se extiende el asiento en la finca equivocada; o cuando se omite la firma del Registrador o Registradora. Véase, Art. 141.3, 141.4, 143.1 y 144.1, Reglamento Núm. 2674, *supra*.

para corregir errores de inscripción cometidos por los Registradores o Registradoras de la Propiedad.

C.

De otra parte, es menester señalar que, recientemente, este Tribunal tuvo oportunidad de interpretar las disposiciones de la Ley Núm. 216-2010, *supra*, en el caso *Parras Silvestry v. Ávila Vargas*, *supra*. En aquella ocasión, analizamos si dos (2) escrituras de individualización y donación de ciertos apartamentos fueron inscritas correctamente a la luz de la Ley Núm. 216-2010, *supra*. *Parras Silvestry v. Ávila Vargas*, *supra*, pág. 834. En dicho caso, la Registradora de la Propiedad indicaba que las individualizaciones de apartamentos no cualificaban para la inscripción automática dispuesta en la Ley Núm. 216-2010, *supra*, de modo que no se podían inscribir las donaciones por falta de tracto sucesivo. *Íd.*, pág. 835. En contraste, las peticionarias -- las hermanas Parras Silvestry -- adujeron que la Registradora de la Propiedad no tenía capacidad jurídica para recalificar los documentos en controversia, ya que habían quedados inscritos de forma automática, en virtud de la Ley Núm. 216-2010, *supra*. *Íd*, pág. 836.

Atendidos los argumentos planteados por las partes, este Tribunal -- por voz del Juez Asociado señor Martínez Torres -- concluyó que la Ley Núm. 216-2010, *supra*, "mandató la inscripción automática de escrituras de individualización de apartamentos sujetos a un Régimen de Propiedad Horizontal". *Parras Silvestry v. Ávila Vargas*, *supra*, pág.

843. Así pues, esta Curia sentenció que las escrituras en controversia quedaron inscritas de forma automática y, como consecuencia, debían presumirse válidas. *Íd*, pág. 844. Siendo ello así, se ordenó la revocación de la calificación de la registradora.

Nótese que, al resolver el caso de *Parras Silvestry v. Ávila Vargas*, *supra*, no nos vimos obligados a atender la controversia ante nuestra consideración. A pesar de que se precisó la metodología para corregir errores en determinadas inscripciones -- es decir, conforme a los Arts. 150 al 154 de la Ley Hipotecaria, *supra*, y los Arts. 141.3-141.7, 142.1, 143.1,143.2 y 144.1 del Reglamento Núm. 2674, *supra* -- no hubo necesidad de aplicar dicha normativa. *Parras Silvestry v. Ávila Vargas*, *supra*, págs. 845-846.[25]

De la misma forma, es útil pasar revista -- a modo de ejemplo -- sobre lo resuelto en *In re Ramos*, 493 B.R. 355 (2013), caso donde el Tribunal de Quiebras se enfrentó a una controversia relacionada a la Ley Núm. 216-2010, *supra*.[26] Allí, se evaluó la naturaleza de cierta acreencia hipotecaria de Banco Popular de Puerto Rico, tras la inscripción de la misma en virtud de la Ley Núm. 216-2010, *supra*. Ello, de forma paralela a determinado procedimiento en virtud del Capítulo 13 de Quiebras. En específico, el deudor arguyó que había falta de tracto sucesivo, por lo que

---

[25] Véase, nota 23, *supra*.

[26] Dicho caso fue discutido *in extenso* por el señor Ramos García, ya que -- a juicio de éste -- apoya sus contenciones.

la inscripción de la hipoteca en virtud de la Ley Núm. 216-2010 fue errada.

En aquel momento, el Tribunal de Quiebras sentenció -- sobre la alegación de falta de tracto sucesivo planteada en el precitado caso -- que:

> [It] is undisputed that at the moment of the filing of the petition the purported Mortgage Deed was presented by BPPR at the Registry of Property without presenting the Purchase Deed and that the mortgage could not be validly recorded in accordance to local law. Failure to present the Purchase Deed previous to the presentation of the Mortgage Deed necessarily results in the lack of successive chain of title. **Without successive record, the mortgage lien may not be validly recorded in accordance to Article 57 of P.R. Mortgage Act of 1979, P.R. Laws Ann. tit. 30, sec. 2260.** (Énfasis suplido) *In re Ramos*, *supra*, págs. 367-368.

Es decir, el Tribunal de Quiebras concluyó que -- sin tracto sucesivo -- la hipoteca no podía ser válidamente inscrita, a la luz del derecho puertorriqueño. Lo anterior es similar a lo ocurrido en el caso de epígrafe.

V.

Por último, y por ser también pertinente a la controversia que nos ocupa, debemos recordar que -- al describir los contornos generales de la hipoteca -- se ha dicho que ésta es:

> [U]n derecho real que, ya de momento, sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor así como la adopción de medidas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo derecho es de carácter accesorio, indivisible, de constitución registral, y grava bienes, ajenos y enajenables, que permanecen en posesión de su propietario o

titular, y el cual implica un poderoso instrumento del crédito territorial. (Énfasis suprimido) Roca Sastre y otros, *op. cit.*, 2009, T.VIII, págs. 15-16. Véase, también, *Haedo Castro v. Roldán Morales*, 203 DPR 324, 341 (2019).

En virtud de ello, el efecto práctico de la hipoteca es sujetar "directa e inmediatamente los bienes sobre [los] que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación para cuya seguridad fue constituida". Art. 1775, Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5043.

Así pues, el Art. 1756 del ahora derogado Código Civil de 1930, 31 LPRA sec. 5001, enumeraba una serie de requisitos indispensables para la otorgación de un contrato de hipoteca. A saber, que se constituya para asegurar el cumplimiento de una obligación principal; que la cosa hipotecada pertenezca en propiedad a quien la hipoteca; y que las personas que constituyan la hipoteca tengan libre disposición de sus bienes o, de no tenerla, que tengan autorización legal para ello. *Íd.* Véase, *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 196 DPR 96, 110 (2016); *Westernbank v. Registradora*, 174 DPR 779, 784 (2008); Rivera Rivera, *op. cit.*, pág. 486.

Además de éstos, el Art. 1774 del antiguo Código Civil de 1930, 31 LPRA sec. 5042, exigía que -- como condición para su validez -- la hipoteca fuera inscrita en el Registro de la Propiedad. Véase, *Haedo Castro v. Roldán Morales, supra*, págs. 341-342; *Dist. Unidos Gas v. Sucn. Declet Jiménez, supra*, pág. 111; *Westernbank v. Registradora, supra*; Rivera Rivera, *op. cit.*, págs. 486-487. Este concepto

fue repetido en el Art. 188 de la Ley Hipotecaria, 30 LPRA sec. 2605, donde se dispone que, como requisito para la constitución de una hipoteca voluntaria, ésta debía ser acordada en una escritura pública y debía ser inscrita en el Registro de la Propiedad. Véase, *Haedo Castro v. Roldán Morales, supra*, pág. 342.

Ahora bien, y según se puede inferir de la doctrina antes señalada, una de las características distintivas de la hipoteca es que su inscripción es constitutiva. Véase, Roca Sastre y otros, *op. cit.*, 2009, T. VIII, pág. 101. Como bien nos dice el profesor Luis Rafael Rivera Rivera, "la jurisprudencia puertorriqueña, siguiendo la doctrina mayoritaria, ha insistido en el carácter constitutivo de este derecho real". Rivera Rivera, *op. cit.*, pág. 487. Véase, también, Roca Sastre y otros, *op. cit.*, 2009, T. VIII, pág. 101; *Haedo Castro v. Roldán Morales, supra*, pág. 341.

No obstante, si bien se requiere la inscripción de la escritura de hipoteca para ser considerada un derecho real, en la instancia en que esto no ocurra, la misma "constituye prueba como documento privado y, por ende, vale como negocio jurídico entre los otorgantes si concurren los requisitos contractuales de consentimiento, objeto y causa". Rivera Rivera, *op. cit.*, pág. 487.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las interrogantes ante nuestra consideración.

## VI.

Como ya mencionamos, en el presente caso, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico nos solicita que determinemos si el cumplimiento con el principio de tracto sucesivo es un prerrequisito para concluir que la inscripción automática de una hipoteca, en virtud de la Ley Núm. 216-2010, *supra*, es válida. Por otro lado, nos consultan si la inscripción automática de una hipoteca -- conforme el estatuto de referencia -- se ve afectada cuando el dueño de la propiedad no corrigió las deficiencias notificadas por el Registrador o Registradora de la Propiedad, resultando en la no inscripción de su título propietario. Contestamos la primera pregunta en la afirmativa, y la segunda en la negativa. Veamos.

Como cuestión de umbral, debemos considerar si en efecto la escritura de hipoteca en controversia está sujeta a la aplicación de la inscripción automática, conforme a lo pautado en la Ley Núm. 216-2010, *supra*. Al considerar la lista taxativa de excepciones expuesta en la ley de referencia -- al igual que en su correspondiente reglamento -- concluimos que dicho negocio queda cobijado por el estatuto de referencia. Debido a que la hipoteca en controversia fue presentada ante el Registro de la Propiedad con anterioridad al 30 de abril de 2010, y no es un instrumento que aparece enumerado en la lista de exclusión, consideramos el mismo sujeto al precitado estatuto.

Siendo ello así, proseguimos a considerar los méritos de la primera pregunta ante nuestra consideración. Para ello, de entrada, debemos señalar que, como regla general, el ordenamiento registral puertorriqueño dispone que los documentos que sean presentados ante el Registro de la Propiedad sufrirán un proceso de calificación. Como consecuencia de lo anterior, en dicho proceso se evalúa la observancia del principio de tracto sucesivo. Normalmente, el incumplir con dicho principio conllevaría la denegación de la inscripción.

No obstante, con la aprobación de la Ley Núm. 216-2010, dicho proceso varía un poco, toda vez que, como hemos visto, la referida disposición legal decreta la inscripción automática de ciertos documentos, sin éstos estar sujetos a la tradicional calificación de parte de un Registrador o Registradora. Tal es el caso de autos.

Inscrita la escritura de hipoteca aquí en controversia, -- entiéndase, la Escritura Núm. 1 de Hipoteca -- en virtud de la Ley Núm. 216-2010, *supra*, el mencionado estatuto dispone que dicha inscripción tiene una <u>presunción</u> de corrección; presunción de corrección que -- conforme a la normativa antes expuesta -- puede ser impugnada.

Siendo ello así, impugnada la validez del asiento inscrito -- en este caso, la Escritura de Hipoteca Núm. 1 --, como hemos visto, los tribunales están en la obligación de pasar juicio sobre el cumplimiento de los requisitos de

la Ley Núm. 216-2010, *supra*, y la Ley Hipotecaria, *supra*. Entre ellos, el principio registral de tracto sucesivo.

Así pues, y en lo relacionado a la primera pregunta que nos hace la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, es forzoso concluir que, en efecto, el ordenamiento jurídico puertorriqueño exige el cumplimiento con el principio de tracto sucesivo, como condición para la validez de la inscripción de la hipoteca aquí en controversia, inscrita en virtud de lo dispuesto en la Ley para Agilizar el Registro de la Propiedad, *supra*.

En cuanto a la segunda interrogante, y cónsono con lo anterior, somos del criterio que el hecho de que el titular no haya corregido las deficiencias notificadas, no cambia el hecho de que -- en el presente caso -- se rebatió la presunción de corrección.[27] En otras palabras, si bien es cierto que una parte no debe cruzarse de brazos al momento de corregir las deficiencias que el Registrador o Registradora le notifique, el principio de tracto sucesivo se sobrepone sobre lo anterior y, en consecuencia, ello no implica que quedará inscrito de forma permanente independientemente de los errores que pueda contener.

En ese sentido, y en lo que respecta a la segunda pregunta que nos realiza la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, respondemos que el hecho de que un titular no haya corregido las deficiencias

---

[27] Particularmente, cuando se puede argüir que el acreedor hipotecario original contribuyó al desface en el tracto sucesivo.

notificadas por el Registrador o Registradora de la Propiedad, no cambia el hecho de que -- en el presente caso -- se rebatió la presunción de corrección instaurada en la Ley para Agilizar el Registro de la Propiedad, *supra*.

## VII.

**En resumen, y a modo de epílogo, en el día de hoy resolvemos que: 1) los asientos en el Registro de la Propiedad, inscritos en virtud de la Ley para Agilizar el Registro de la Propiedad, *supra*, se presumen correctos y exactos; 2) dichos asientos están bajo la salvaguarda de los tribunales; 3) impugnada la validez de un asiento, los tribunales deben pasar juicio sobre si al momento de inscribir se cumplieron los requisitos de la Ley Núm. 216-2010, *supra*, y la Ley Hipotecaria, *supra*; y 4) ello es así, puesto que el propósito de la Ley 216-2010, *supra*, -- conocida como la Ley para Agilizar el Registro de la Propiedad -- fue adelantar los trabajos del Registro de la Propiedad y combatir el retraso en la calificación e inscripción de documentos públicos, no convertir lo irreal en real.**

## VIII.

Establecido lo anterior, y por los fundamentos que anteceden, resolvemos que el ordenamiento jurídico puertorriqueño exige el cumplimiento con el principio de tracto sucesivo, como condición para la validez de la inscripción de una hipoteca en virtud de la Ley Núm. 216-2010, *supra*. Asimismo, concluimos que el hecho de que el

titular no haya corregido las deficiencias notificadas, no cambia el hecho de que -- en el presente caso -- se rebatió la presunción de corrección.

Se ordena al Negociado de Traducciones de este Tribunal que traduzca al inglés esta *Opinión*. Una vez traducida, la Secretaría de esta Curia deberá enviar una copia de la misma a la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico.

Se dictará sentencia de conformidad.


                                        Ángel Colón Pérez
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

DLJ Mortgage Capital, Inc.

      Peticionario

           v.

Federico Alberto García Ramos,
t/c/c Federico A. Ramos García

      Recurridos

CT-2020-0009    *Certificación Interjurisdiccional*

## SENTENCIA

En San Juan, Puerto Rico a 14 de mayo de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, resolvemos que el ordenamiento jurídico puertorriqueño exige el cumplimiento con el principio de tracto sucesivo, como condición para la validez de la inscripción de una hipoteca en virtud de la Ley Núm. 216-2010, conocida como Ley para Agilizar el Registro de la Propiedad, 30 LPRA sec. 1821 et seq. Asimismo, concluimos que el hecho de que el titular de un instrumento público no corrija las deficiencias notificadas por el Registrador de la Propiedad, no cambia que -- tal como ocurrió en el presente caso -- se pueda rebatir la presunción de corrección instituida por la precitada ley.

Se ordena al Negociado de Traducciones de este Tribunal que traduzca al inglés esta Opinión. Una vez traducida, la Secretaría de esta Curia deberá enviar una copia de la misma a la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico.

Notifíquese inmediatamente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo