RIGORES, INC., recurrente, *v.* HON. JOSÉ TOMÁS ROJAS NIEVES, REGISTRADOR DE LA PROPIEDAD, SECCIÓN DE BARRANQUITAS, recurrido.

*Número:* RG-2004-2      *Resuelto:* 16 de septiembre de 2005

714

*Juan R. Zalduondo Viera*, abogado de la parte recurrente; *José Tomás Rojas Nieves*, registrador de la propiedad; Sección de Barranquitas.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

En 1978, Roda Development Corp. suscribió veintinueve pagarés constituidos a la orden del portador y con vencimiento a la presentación por la suma principal de $26,000, cada uno con intereses al 8% anual desde la fecha de su otorgamiento hasta su completo pago. Los referidos pagarés fueron garantizados mediante una hipoteca que gravó veintinueve fincas que eran de la propiedad de Roda Development Corp., sitas en Corozal.([1]) La hipoteca fue presentada para inscripción en el Registro de la Propiedad el 15 de diciembre de 1978, quedando inscrita el 11 de junio de 1979.([2])

A pesar de los requerimientos de Rigores, Inc. —tenedora de los pagarés hipotecarios— Roda Development Corp. no efectuó los pagos convenidos. En virtud de ello, *el 24 de enero de 2001*, Rigores, Inc. instó un procedimiento ordinario de ejecución de hipoteca ante el Tribunal de Primera Instancia, Sala Superior de Bayamón.([3]) El 6 de septiembre de 2001, el foro primario dictó sentencia a favor de Rigores, Inc. y ordenó la venta en subasta pública de las propiedades hipotecadas para asegurar el cumplimiento de la sentencia y obtener el pago de los créditos hipotecarios.([4])

Posteriormente, el tribunal de instancia declaró "con lugar" una orden para solicitar la ejecución de una hipoteca presentada por la demandante Rigores, Inc. y ordenó a la Secretaría de dicho foro a emitir el mandamiento corres-

---

([1]) Escritura Núm. 165 sobre hipoteca suscrita el 4 de agosto de 1975 ante la notario Nilda Soto de Bernier.

([2]) En virtud del Art. 53 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 2256, la fecha de inscripción de un título se retrotrae a la fecha de su presentación.

([3]) Civil Núm. DCD01-0171. La referida demanda *no* fue anotada en el Registro de la Propiedad para dar aviso a terceros.

([4]) La demandada, Roda Development Corp. no había contestado la demanda ni formulado alegación alguna, razón por la cual se le anotó, y se dictó sentencia, en rebeldía.

pondiente, requiriéndole al alguacil que procediese a la ejecución de la sentencia dictada en el caso.

La subasta pública fue celebrada el 22 de septiembre de 2003. A ésta concurrió la demandante Rigores, Inc., como único licitador, e hizo oferta por la suma de treinta mil dólares por cada una de las fincas en abono a la sentencia dictada el 6 de diciembre de 2002. No habiendo otra oferta, *se le adjudicó la buena pro de cada una de las fincas que respondían por los pagarés hipotecarios suscritos por Roda Development Corp.*

Posteriormente, el alguacil y la corporación Rigores, Inc. comparecieron como otorgantes de la Escritura Núm. 219 de venta judicial suscrita ante la notario Rosa E. Permuy Calderón, por medio de la cual se transfirió la titularidad de los inmuebles vendidos en pública subasta a Rigores, Inc.

Así las cosas, el *10 de diciembre de 2003* la licenciada Permuy Calderón presentó la escritura de venta judicial en el Registro de la Propiedad, Sección de Barranquitas. El Registrador de la Propiedad (Registrador) *denegó* la inscripción solicitada; notificó seis faltas que impedían la inscripción de la referida escritura. Las faltas señaladas fueron las siguientes:

1. Que las fincas constaban inscritas a favor de Kaiser Construction, Inc., *titular distinto del demandado Roda Development Corp.*[5] y que, tratándose de una ejecución de hipoteca por la vía ordinaria,[6] la indebida notificación a la persona contra la cual se ha instado una acción judicial producía la nulidad de la sentencia dictada por falta de

---

[5] De las veintinueve fincas sujetas al pago de la obligación, dieciocho *constaban inscritas en el Registro de la Propiedad a favor de Kaiser Construction, Inc. desde el 21 de noviembre de 2000.* Kaiser Construction, Inc. adquirió las referidas fincas por compra mediante subasta pública *producto de un pleito en cobro de dinero contra Roda Development Corp.* (civil núm. 90-2368) y en virtud de la Escritura Núm. 10 de venta judicial otorgada el 28 de junio de 1999 ante el notario Antonio Aponte Parés.

[6] Es menester señalar que del Registro de la Propiedad surge que las veintinueve fincas se hallan afectas a la hipoteca de $26,000 a favor del portador con vencimiento a la presentación desde el 15 de diciembre de 1978.

jurisdicción, según lo resuelto en *Lanzó Llanos v. Banco de Vivienda*, 133 D.P.R. 507 (1993).

2. Que en todo caso que se inicie el procedimiento de ejecución, tendrá que demandarse al titular inscrito, según el Art. 181.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario), 30 L.P.R.A. sec. 870.651, edición de 2003.

3. Que es nulo todo procedimiento de ejecución de hipoteca donde no se incluya como demandado al titular registral, según lo resuelto en *Metropolitan Marble Corp. v. Pichardo*, 145 D.P.R. 607 (1998).

4. Que ya que de los documentos no surgía que se hubiera instado acción alguna contra el titular inscrito, se incumplía con la Regla 51.8 de Procedimiento Civil, 32 L.P.R.A. Ap. III, ya que éste debió haber sido demandado y notificado del procedimiento en su contra.

5. Que del Registro de la Propiedad surgía, en cuanto al asiento 224 del diario 492, que se había presentado una instancia *el 16 de abril de 2003*, en la que se solicitó la cancelación de la hipoteca que se ejecutaba mediante el documento presentado (escritura de venta judicial), por ésta haber prescrito según el Art. 145 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 2469.[7]

6. Que la Ley Hipotecaria, en su Art. 53 (30 L.P.R.A. sec. 2256), dispone que para determinar la preferencia entre dos o más inscripciones relativas a una misma finca, se atendería la fecha, la hora y el número de la presentación en el Registro de la Propiedad. Por lo tanto, al retrotraerse la efectividad de la cancelación de la hipoteca a la fecha de la presentación de la instancia, el 16 de abril de 2003, *no*

---

[7] *Previo* a la fecha de presentación de la escritura de venta judicial suscrita por Rigores, Inc., en el Registro de la Propiedad se había presentado una instancia, el *16 de abril de 2003*, al asiento 224 del diario 492. Dicha instancia fue jurada y suscrita por Kaiser Construction, Inc. ante el notario Nelson W. González y en ella *solicitó que se cancelara la hipoteca —por prescripción— en cada una de las fincas que garantizaba los pagarés suscritos por Roda Development Corp.*

*existía* la hipoteca a ser ejecutada debido a la solicitud de su cancelación.(⁸)

Inconforme con la calificación, Rigores, Inc. presentó un escrito de recalificación. En cuanto a los primeros cuatro señalamientos de faltas alegó que, en la escritura de venta judicial, se expresaron todos los procedimientos seguidos y aprobados por el tribunal competente que sirvieron de base para la adjudicación de las propiedades y el otorgamiento de dicha escritura,(⁹) y que tratándose de un documento expedido por la autoridad judicial, la facultad calificadora de un Registrador de la Propiedad es limitada. Señaló, además, que según el Art. 181.1 del Reglamento Hipotecario, ante, se requiere que en la demanda de ejecución hipotecaria se incluya al titular registral que conste del Registro de la Propiedad al momento en que se presenta ésta y que el demandante no tiene la obligación de estudiar la situación registral de la propiedad que se ejecuta durante todo el transcurso del trámite judicial.

En cuanto a los últimos dos señalamientos de faltas, Rigores, Inc. alegó que cuando la inscripción de los derechos presentados en el Registro de la Propiedad se retrotrae a la fecha de su presentación, sólo tiene consecuencia en cuanto a los efectos de su rango para propósitos del tracto registral y no el de brindar protección sobre un derecho aún no inscrito. En otras palabras, señaló que hasta tanto el derecho presentado no se calificara favorablemente, no podía hablarse de un derecho inscrito. Además, alegó que la hipoteca no estaba prescrita, pues el término prescriptivo había sido interrumpido por la acción judicial de ejecución de hipoteca, aun cuando dicha interrupción no surgía del Registro de la Propiedad. Por virtud de lo anterior, solicitó del Registrador que reconsiderara la calificación e inscribiera la escritura de venta judicial presentada.

---

(⁸) Es menester señalar que, según surge del expediente, *la referida hipoteca aún no ha sido cancelada por el Registrador de la Propiedad (Registrador).*

(⁹) Se señaló, además, que se acompañaron documentos complementarios que acreditaban los trámites efectuados de la acción judicial y del aviso y venta en pública subasta.

El Registrador *ratificó* su calificación original. Aún inconforme, Rigores, Inc. presentó un recurso gubernativo ante este Tribunal en revisión de la mencionada determinación. En éste hace, en esencia, dos señalamientos de error. En el primero alega que erró el Registrador al denegar la inscripción de la escritura de venta judicial sin considerar el procedimiento adjudicativo ante el Tribunal de Primera Instancia y la sentencia dictada por dicho foro. En el segundo, alega que erró el Registrador de la Propiedad al darle valor de elemento de tracto sucesivo a una instancia presentada sin ser avalada por un dictamen de un tribunal de justicia competente y sin que se demostrara la validez de la cancelación solicitada. El Registrador presentó su alegato. Contando con la comparecencia de ambas partes, y estando en posición de resolver el recurso presentado, procedemos a así hacerlo.

## I

La primera controversia planteada ante nos se reduce a determinar si el Registrador podía denegar la inscripción de la escritura de venta judicial por razón de no haberse incluido al titular registral en el procedimiento de ejecución de hipoteca. Lo anterior, en virtud de los primeros cuatro señalamientos de falta que hiciera el referido funcionario.

■ Como parte del principio de legalidad inmerso en nuestro ordenamiento registral, los Registradores de la Propiedad tienen la obligación legal de verificar que todo documento presentado ante el Registro de la Propiedad sea válido y perfecto. *R & G Premier Bank P.R. v. Registrador*, 158 D.P.R. 241 (2002); *Gasolinas PR v. Registrador*, 155 D.P.R. 652 (2001); *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448, 465 (1989); *Dershowitz & Co., Inc. v. Registrador*, 105 D.P.R. 267 (1976).

■ La calificación registral constituye la piedra angular del principio de legalidad. Esta calificación exige del

Registrador un juicio de crítica jurídica sobre la validez y eficacia de los negocios jurídicos contenidos en los documentos presentados, a través de la cual se logra que sólo tengan acceso al Registro de la Propiedad *los títulos que cumplan con las exigencias legales.* Véase *Alameda Tower Associates v. Muñoz Román*, 129 D.P.R. 698, 706 (1992).

■    Específicamente, la facultad de calificar los documentos que le son presentados le es otorgada al Registrador de la Propiedad por el Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267, que establece:

> Los registradores calificarán, *bajo su responsabilidad* la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los registradores fundamentarán su calificación de los actos y contratos a registrarse en los documentos que se presenten, *los asientos registrales vigentes y las leyes.*
>
> .    .    .    .    .    .    .    .
>
> En cuanto a los documentos expedidos por la autoridad judicial, la calificación expresada se limitará:
>
> (1) A la jurisdicción y competencia del tribunal; a la naturaleza y efectos de la resolución dictada si ésta se produjo en el juicio correspondiente; y si se observaron en él los trámites y preceptos esenciales para su validez;
>
> (2) a las formalidades extrínsecas de los documentos presentados; y
>
> (3) a los antecedentes del registro.
>
> En cualquier caso el registrador podrá requerir se produzcan los documentos complementarios necesarios para una adecuada calificación, bien sean éstos notariales, judiciales o administrativos. (Énfasis suplido.)

■    Según el Prof. Luis Rafael Rivera Rivera,

> [c]uando la Ley señala que al calificar, el Registrador utilizará el propio Registro, quiere significar que deberá acudir a los asientos vigentes y realizar una comprobación de datos: identidad de la finca, identidad del titular registral, buscas de cargas y gravámenes, etc. L.R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 2da ed., San Juan, Jurídica Eds., 2002, pág. 285.

■ Resulta evidente del antes transcrito Art. 64 *que, dependiendo del tipo de documento que el Registrador tenga ante sí*, su facultad calificadora será distinta. Cuando se trata de *documentos notariales*, su facultad para calificar se extiende a examinar que: (1) éstos cumplan con las formas extrínsecas dispuestas por la ley; (2) los otorgantes ostenten la capacidad jurídica para realizar el negocio jurídico pertinente; (3) los actos dispositivos contenidos en la escritura presentada sean válidos, y (4) *no existan obstáculos que surjan del Registro de la Propiedad que impidan la inscripción del documento*. Véanse: *Gasolinas PR v. Registrador*, ante; *Western Fed. Savs. Bank v. Registrador*, 139 D.P.R. 328 (1995).

■ En cambio, al calificar *documentos expedidos por la autoridad judicial*, la facultad calificadora del Registrador es limitada. Así, la calificación registral se circunscribe, únicamente, a lo dispuesto por el Art. 64 de la Ley Hipotecaria, ante. En este caso —por entender que la escritura de venta judicial es un documento expedido por autoridad judicial para efectos de la calificación— la recurrente Rigores, Inc. sostiene que el Registrador no podía cuestionar el procedimiento de ejecución hipotecaria previamente atendido y avalado por el foro de instancia, y que sirvió de base para la adjudicación de las propiedades y el otorgamiento de la escritura en cuestión. *Veamos*.

■ En *C.R.U.V. v. Registrador*, 117 D.P.R. 662 (1986), resolvimos que para efectos de lo dispuesto por el referido Art. 64, en cuanto a la calificación de documentos judiciales, una *escritura pública de compraventa judicial*, en la cual sólo comparece el alguacil como parte en su carácter oficial, *no constituye un documento expedido por la autoridad judicial*.[10] A estos efectos expresamos que "[l]a escri-

---

[10] En *Atanacia Corp. v. J.M. Saldaña, Inc.*, 133 D.P.R. 284 (1993), reiteramos lo resuelto en *C.R.U.V. v. Registrador*, 117 D.P.R. 662 (1986), a los efectos de que la escritura pública de venta judicial, en la que el alguacil del tribunal interviene en representación de uno de los otorgantes, no se considera un documento expedido por la autoridad judicial.

tura pública de compraventa en que el funcionario judicial interviene en representación de uno de los otorgantes y ésta está autorizada por un notario, *no* puede considerarse como un documento expedido por autoridad judicial". (Énfasis suplido.) Íd., pág. 667.[11]

■ Por consiguiente, en este caso, al no ser la escritura de venta judicial presentada ante el Registrador un documento expedido por la autoridad judicial, éste *no* se encontraba limitado según lo dispuesto por el Art. 64 de la Ley Hipotecaria, ante, para la calificación de documentos judiciales. *Dicho de otra forma, el Registrador tiene que calificar una escritura pública de venta judicial dentro del ámbito de la calificación de los documentos notariales.* Véase *Rodríguez Morales v. Registrador*, 142 D.P.R. 347 (1997).

De otra parte, atendemos los planteamientos hechos por el Registrador con respecto a la nulidad de la sentencia dictada por el foro primario en el pleito de ejecución de hipoteca. El Registrador fundamentó su denegatoria a inscribir la escritura de venta judicial, objeto de este recurso, citando lo resuelto en los casos *Lanzó Llanos v. Banco de Vivienda*, ante, y *Marble Corp. v. v. Pichardo*, ante. Según el Registrador, siguiendo lo expresado en los casos antes citados, la sentencia del tribunal de instancia que ordena la venta en pública subasta de los inmuebles era nula por causa de no haberse demandado al titular registral en el procedimiento de ejecución de hipoteca.

■ En *Lanzó Llanos v. Banco de Vivienda,* ante —*pleito contencioso donde se impugnaba la validez de una sentencia dictada en ejecución de una hipoteca*— resolvimos que la sentencia era nula por incumplimiento con los

---

[11] Citamos allí resoluciones del Tribunal Supremo de España de 29 de marzo de 1880, de 26 de noviembre de 1884, de 30 de marzo de 1885, de 30 de mayo de 1898 y de 31 de marzo y de 11 de julio de 1936, a J.M. Mena y San Millán, *Calificación Registral de Documentos Judiciales*, Barcelona, Ed. Bosch, 1985, pág. 43, y a B. Camy Sánchez Carnete, *Comentarios a la Legislación Hipotecaria*, 3ra ed., Pamplona, Ed. Aranzadi, 1982, Vol. I, pág. 236 y Vol. VI, págs. 755–756.

requisitos rigurosos dispuestos en *Mundo v. Fúster*, 87 D.P.R. 363 (1983), y en las Reglas de Procedimiento Civil, para el emplazamiento mediante edictos, ya que la indebida notificación a la persona contra quien se ha instado un pleito produce la nulidad de la sentencia dictada por falta de jurisdicción. Por su parte, en *Marble Corp. v. Pichardo*, ante, ciertamente resolvimos —también dentro de un pleito contencioso— que la ausencia de notificación al titular registral acarreaba la nulidad del procedimiento de subasta.

No obstante, en los referidos casos *no* resolvimos, de forma alguna, que un Registrador podía, al momento de calificar un documento ante sí, hacer una determinación de nulidad de una sentencia como fundamento para denegar una inscripción.

■■■■■■ Es de notar que en *Dershowitz & Co., Inc. v. Registrador*, ante, habíamos señalado que la función calificadora del Registrador de la Propiedad tiene la particularidad de que ésta es ejercida por un *funcionario administrativo*, por lo cual se excluye la idea de que el Registrador sea un juez que adjudique derechos. En este sentido sostuvimos en *P.R. Prod. Cred. Assoc. v. Registrador*, 123 D.P.R. 231 (1989), que un Registrador no puede actuar como juez, *y expresamos que permitir que un Registrador revise una sentencia emitida por un tribunal tendría el efecto de convertir a este funcionario ejecutivo en un juez de jueces.*[12] La función de declarar nula una sentencia corresponde, *únicamente*, a los tribunales.[13] Los Registradores *no pueden* hacer esta determinación. En consecuencia, el Registrador, en este caso, erró al señalar como defecto la *nulidad* de la sentencia dictada por el foro primario.

---

[12] Además, resolvimos en *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989), que cuando el negocio que va a ser inscrito está sancionado por un tribunal de justicia, debe prevalecer la presunción de validez de la sentencia.

[13] La acción de nulidad del proceso de subasta y de venta judicial es el recurso apropiado para impugnar la validez de la sentencia dictada por el foro primario en el presente caso.

*Ahora bien*, el Registrador *correctamente señaló*, como falta de la que adolecía la escritura de venta judicial presentada por Rigores, Inc., que ésta incumplió con el requisito dispuesto en el Art. 181.1 del Reglamento Hipotecario, ante, *al no acreditar que se había demandado al titular registral en el procedimiento de ejecución de hipoteca*. Es menester enfatizar sobre este particular que el propio Art. 64 de la Ley Hipotecaria, ante, le impone al Registrador el *deber* de tomar en consideración los *asientos registrales* vigentes *y las leyes* al momento de calificar los documentos que se le presenten.

A estos efectos, el mencionado Art. 181.1 del Reglamento Hipotecario, ante, dispone, sobre el procedimiento de ejecución de hipoteca, que en todo caso que se inicie el procedimiento de ejecución por la vía ordinaria, *tendrá que demandarse al titular inscrito*.

En el caso *Atanacia Corp. v. J.M. Saldaña, Inc.*, 133 D.P.R. 284 (1993), expresamos que el proceso ordinario de ejecución de hipoteca se inicia con la presentación de una demanda ante el tribunal competente *y el emplazamiento del titular registral del bien o del derecho hipotecado o sus causahabientes.*([14])

Expresamos, además, en dicho caso que en el proceso post sentencia de la subasta, venta y adjudicación de los bienes para hacer efectivo el crédito bajo el procedimiento ordinario, la intervención judicial resulta limitada. Salvo contadas excepciones, el foro judicial deja en manos del alguacil del tribunal y del acreedor ejecutante el proceso post sentencia de subasta, venta y adjudicación de los

---

([14]) El procedimiento ordinario de ejecución de hipoteca, según el Art. 201 de la Ley Hipotecaria, 30 L.P.R.A. sec. 7701, está regulado por los Arts. 202 y 207, párrafos V y VI, y Arts. 220 a 224 y 226 de esta ley, exceptuando la frase relativa al requisito de confirmación; Arts. 227 a 229, 231, 232 y 234 de la ley, y por las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse, además: *C.R.U.V. v. Torres Pérez*, 111 D.P.R. 698 (1981); *Ramírez v. Registrador*, 116 D.P.R. 541 (1985); *Housing Inv. Corp. v. Registrador*, 110 D.P.R. 490 (1980); *Talcott Inter-Amer. Corp. v. Registrador*, 104 D.P.R. 254 (1975); *Mundo v. Fúster*, 87 D.P.R. 363 (1963).

bienes ejecutados para satisfacer el crédito.[15] Sobre este particular, el Prof. Luis Rafael Rivera Rivera expresa que el procedimiento ejecutivo ordinario se compone de una fase previa contenciosa y una eminentemente ejecutiva en que la intervención judicial post sentencia de la subasta, venta y adjudicación de los bienes es limitada. Por ello, señala el referido autor, es recomendable que antes de iniciarlo *se realice un estudio de título del bien objeto de la ejecución para identificar su titular registral,* los gravámenes posteriores y posibles embargos.

Como vemos, en la ejecución del crédito, el acreedor *está obligado por las constancias del Registro de la Propiedad,* sin que se le imponga la obligación de investigar e identificar, para incluirlos en su demanda, los posibles adquirentes ocultos del bien hipotecado, según resolvimos en *Housing Inv. Corp. v. Registrador,* 110 D.P.R. 490 (1980). En este caso expresamos, además, que el acreedor hipotecario ejecutante *puede y debe depender* del Registro de la Propiedad *e incoar su demanda contra el que allí aparece como titular poseedor del inmueble gravado al comienzo de la acción ejecutoria.* Íd.

De modo tal que, ante la importancia de la exigencia que le impone la propia Ley Hipotecaria al acreedor hipotecario, *el Registrador será responsable de velar por que se haya cumplido con el requisito de notificación al titular registral, previo a la inscripción de una escritura de venta judicial mediante la cual se transfiere el derecho de propiedad a otra persona.* A tono con lo anterior, es razonable concluir que el Registrador, al momento de calificar una escritura de venta judicial producto de un procedimiento ordinario de ejecución de hipoteca, inquiera y solicite que se acredite si el titular registral inscrito fue parte del procedimiento. Máxime cuando, como en el presente caso, aparece claramente *del Registro de la Propiedad* que

---

[15] Véase la Regla 51.8(b), (c) y (d) de Procedimiento Civil, 32 L.P.R.A. Ap. III.

el titular registral es distinto del que fue demandado en el pleito de ejecución hipotecaria.

En el presente caso, al momento de iniciarse el pleito —24 de enero de 2001— dieciocho de las fincas vendidas en pública subasta constaban inscritas a favor de Kaiser Construction Inc.([16]) Vale la pena resaltar que Rigores, Inc. inició el pleito de ejecución de hipoteca únicamente contra la demandada Rodas Development Corp. El titular registral de estas fincas, Kaiser Development Corp., *no* fue demandado ni incluido en el pleito.

En consecuencia, las faltas señaladas por el Registrador a estos efectos son correctas, ya que surge claramente que Rigores, Inc. incumplió con la Ley Hipotecaria al dejar de demandar al titular registral en el procedimiento de ejecución de hipoteca.

## II

El Registrador expresa en su alegato, como *fundamento adicional* a la denegatoria de inscripción del documento en cuestión, que al surgir del Registro de la Propiedad, como titular de las propiedades, una persona distinta a la que aparece como transmitente del derecho a inscribirse, había falta de tracto sucesivo, factor que también impedía la inscripción. Le asiste la razón.

▇▇▇▇ El principio de tracto sucesivo tiene relación con la antes mencionada obligación del acreedor ejecutante de demandar al titular registral al momento de iniciarse el pleito sobre ejecución de hipoteca, ya que para que un título o documento constitutivo de un derecho real tenga acceso al Registro de la Propiedad, es necesario que el derecho del transmitente conste previamente inscrito.

▇▇▇▇▇ El principio de tracto sucesivo o de continuidad registral tiene por objeto mantener el enlace o la co-

---

([16]) Kaiser Construction Inc. tenía el derecho de propiedad sobre las referidas fincas inscrito a su favor desde el 21 de noviembre de 2000.

nexión de las adquisiciones por el orden regular de los titulares registrales sucesivos, para formar una continuidad perfecta de todos los actos adquisitivos inscritos en orden al tiempo, de suerte que ello refleje el historial sucesivo de cada finca inmatriculada; de modo que el transferente de un derecho real hoy sea el adquirente de ayer y que el titular registral actual sea el transferente de mañana. R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, pág. 327. Por ello, el "principio de tracto sucesivo es un principio de orden, a través del cual giran los demás principios hipotecarios, y señaladamente los de fe pública y de legitimación registral". Roca Sastre, *op. cit.*, pág. 328; *Vázquez Santiago v. Registrador*, 137 D.P.R. 384, 390–391 (1994).

Específicamente, el Art. 57 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2260, dispone que:

> Para registrar documentos por los que se declaren, trasmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, *deberá constar previamente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos.*
> *Se denegará la registración de resultar inscrito el derecho a favor de persona distinta de la que otorga la trasmisión o gravamen.* No obstante, podrán inscribirse sin el requisito de la previa inscripción las resoluciones y ejecutorias, que se refieren en las secs. 2761 a 2777 de esta ley. (Énfasis suplido.)

Por consiguiente, el Art. 57, ante, le impone al Registrador la obligación de comprobar si el derecho del disponente consta inscrito a su favor en el Registro de la Propiedad. De modo que si el título presentado aparece otorgado por una *persona distinta* del titular registral, el Registrador está *imposibilitado* de inscribir. Además, por disposición *expresa* del Art. 57, ante, cuando un título presentado para su inscripción no cumpla con el tracto sucesivo, se denegará la inscripción solicitada. *Vázquez Santiago v. Registrador*, ante, pág. 390.

Por otro lado, el Art. 68 (30 L.P.R.A. sec. 2271) dispone:

Serán faltas que impidan la registración del título presentado:

(1) Las que causen la inexistencia del acto o contrato a registrarse o la nulidad o anulabilidad de éste o del documento presentado.

(2) *Las que se originen de obstáculos del Registro.*

(3) Las que se funden en disposiciones de este subtítulo.

(4) El no presentar los documentos complementarios necesarios o no acreditarse el cumplimiento de las formalidades exigidas por las leyes.

■ Sobre este particular, el Prof. Luis Rafael Rivera Rivera expresa que, entre las causas que impiden la inscripción de título y que se originan de obstáculos en el Registro de la Propiedad, *se encuentra la falta de tracto sucesivo, porque el transferente no aparece como titular registral,* las prohibiciones de enajenar inscritas o la existencia de condiciones restrictivas que impiden el acto o contrato que se pretende inscribir. Rivera Rivera, *op. cit.,* págs. 305–306.

En este caso, *surgía del Registro de la Propiedad* que el titular registral de dieciocho de las fincas al momento de presentarse la escritura de venta judicial lo era Kaiser Construction, Inc. Compareció en dicha escritura el alguacil del tribunal en representación de Rodas Development Corp., quien fue la entidad demandada como propietaria de las fincas. Dicha entidad no era la titular registral de dieciocho de las fincas vendidas en pública subasta, según los libros del Registro de la Propiedad, ya que constaban inscritas a favor de Kaiser Construction, Inc. La consecuencia de lo anterior es que no hay tracto sucesivo.

Por consiguiente, repetimos, es correcto el señalamiento del Registrador a los efectos de que la falta de tracto sucesivo también era factor que impedía la inscripción de la referida escritura, pues el transmitente del título, Roda Development Corp., no tenía su derecho previamente registrado, tal y como lo ordena el Art. 57 antes citado.

## III

En conclusión, resolvemos que el Registrador actuó correctamente al denegar la escritura de venta judicial presentada por Rigores, Inc., ya que dicha entidad incumplió con el requisito impuesto por el Art. 181.1 del Reglamento Hipotecario, ante, al no demandar al titular inscrito en el Registro de la Propiedad, Kaiser Development Corp., en el procedimiento de ejecución hipotecaria, conllevando este acto, además, a la falta de tracto sucesivo, razones por la cual el Registrador se encontraba impedido de inscribir la referida escritura.([17])

A la luz de los fundamentos antes expuestos, *se confirma la calificación recurrida.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri se inhibió.

---

([17]) En vista a ello, se hace innecesario discutir los señalamientos de faltas quinto y sexto.