Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| Banco Bilbao Vizcaya Argentaria<br><br>Peticionado<br><br>v.<br><br>Costa Real, S.E.; Arturo Madero Arboleda; Alturas del Bosque<br><br>Peticionados<br><br>**Héctor M. Piñeiro Morales, Brunilda Araúz Nieves y la Sociedad Legal Gananciales compuesta por ambos y otros siete (7), ver Anejo A**<br><br>Peticionarios | KLCE202400266 | *Apelación acogida como Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm. N3CI200900419<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de abril de 2024.

## I.

El 26 de febrero de 2024, el señor Héctor M. Piñeiro Morales, la señora Brunilda Araúz Nieves, la Sociedad Legal de Gananciales compuesta por ambos y otros condóminos de Costa Dorada y Costa Dorada II de Río Grande, Puerto Rico (parte peticionaria),[1] presentaron una *Apelación*, en la que nos solicitaron revocar una *Orden* emitida el 26 de octubre de 2023 por el Tribunal de Primera Instancia, Sala de Río Grande en Fajardo (TPI).[2] En virtud del aludido dictamen, el TPI

---

[1] Manifiesta que se incluyen en el Anejo A, el cual no se presentó.
[2] Apéndice de *Apelación*, Anejo 35, pág. 239. Archivada y notificada en autos el 2 de noviembre de 2023. El 17 de noviembre de 2023, la parte peticionaria solicitó reconsideración, la cual el TPI declaró No Ha Lugar mediante una *Orden* emitida el 23 de enero de 2024 y notificada el 26 de enero de 2024.

denegó la solicitud de intervención de la parte peticionaria en una etapa post-sentencia del pleito promovido por el Banco Bilbao Vizcaya Argentaria Puerto Rico (BBVA).[3]

El 28 de febrero de 2024, emitimos una *Resolución*, notificada el 4 de marzo de 2024, en la cual concluimos que, a pesar de que este recurso se presentó como una apelación, correspondía acogerse como un *certiorari* por recurrirse de un dictamen interlocutorio post-sentencia. A su vez, concedimos un término de diez (10) días, a partir de la notificación de la *Resolución*, para que CDJR, Costa Real, S.E. (Costa Real), el señor Arturo Madero Arboleda (señor Madero Arboleda) y Alturas del Bosque, S.E. (Alturas del Bosque) expusieran su posición sobre los méritos del recurso.

El 14 de marzo de 2024, CDJR peticionó una prórroga para exponer su posición en cuanto a la expedición del auto de *certiorari*. En atención al petitorio, el 15 de marzo de 2024, emitimos una *Resolución* en la que le concedimos a CDJR hasta el 19 de marzo de 2024 como término final para cumplir con lo ordenado.

En cumplimiento con lo anterior, el 19 de marzo de 2024, CDJR presentó su alegato en oposición a la expedición del auto de *certiorari* por falta de jurisdicción.

Posteriormente, el 20 de marzo de 2024, la parte peticionaria solicitó una prórroga y autorización para replicar el escrito sometido por CDJR, la cual denegamos.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizaremos los hechos atinentes a esta petición de *certiorari*.

**II.**

El caso de marras tuvo su génesis el 9 de junio de 2009, cuando BBVA presentó una *Demanda* en cobro de dinero y ejecución de

---

[3] A partir del 9 de enero de 2015, BBVA se sustituyó por CDJR Development, LLC (CDJR).

hipoteca contra Costa Real, el señor Madero Arboleda, Alturas del Bosque, San Gerónimo Caribe Project, Inc. (San Gerónimo Caribe Project) y San Gerónimo Caribe Parking, Inc. (San Gerónimo Caribe Parking).[4] En su reclamación, BBVA arguyó que, para desarrollar el proyecto Costa Dorada, el 23 de mayo de 2000, Costa Real adquirió un primer préstamo de construcción con BBVA por la suma de $29,000,000.00, el cual está saldo. Concretó que el 17 de junio de 2004, Costa Real adquirió un segundo préstamo de construcción con BBVA por la suma de $31,950,700.00, para la segunda fase de Costa Dorada, que incluyó el desarrollo de Costa Dorada II y Costa Azul. Aseveró que la referida deuda se garantizó mediante la otorgación de varias hipotecas que se detallan a continuación:

**Garantías y colateral otorgado por Costa Real**

Sostuvo que Costa Real otorgó una primera hipoteca por la suma de $4,000,000.00, mediante la Escritura Número 54 de 27 de mayo de 1999 ante el notario Carlos García Rullán. BBVA indicó que esta primera hipoteca se extendió y modificó la primera hipoteca por las sumas de $13,700,000.00 y $3,000,000.00, respectivamente, por virtud de la Escritura Número 52 de 23 de mayo de 2000 y la Escritura Número 39 de 14 de septiembre de 2001 ante el mismo Notario. BBVA alegó que la primera hipoteca gravó una propiedad ubicada en Río Grande que, mediante la Escritura Número 60 de 28 de noviembre de 2001 ante el mismo Notario, se segregaron las fincas: Parcela A - *Water cistern and maintenance*; Parcela B; Parcela C; Parcela D - *Sanitary sewer pump station*; Parcela E - *Community facilities*; Parcela F - *Main avenue*; Remanente; Remanente I - *Costa Azul*; Remanente II; Remanente III; Remanente IV - *Costa Verde* y Remanente V - *Sanitary sewer pump station*.

---

[4] Apéndice de *Apelación*, Anejo 1, págs. 1-12.

Adujo que Costa Real otorgó una segunda hipoteca por la suma de $2,800,000.00, mediante la Escritura Número 7 de 14 de febrero de 2002 ante el notario Carlos García Rullán. Estableció que la responsabilidad hipotecaria se distribuyó para que la Parcela B responda por la suma de $1,288,000.00 y la Parcela C por $1,512,000.00.

BBVA puntualizó que Costa Real otorgó una tercera hipoteca que gravó el Remanente I – *Costa Azul,* por la suma de $1,300,000.00, por virtud de la Escritura Número 31 de 17 de junio de 2004 ante el notario Carlos García Rullán. Precisó que dicha tercera hipoteca se amplió y modificó por las sumas de $1,020,000.00 y $380,000.00, respectivamente, mediante la Escritura Número 6 de 24 de enero de 2007 ante el notario Virgilio Ramos Tomasini y la Escritura Número 20 de 26 de junio de 2008 ante el notario José R. Jiménez del Valle.

BBVA expresó que el 17 de junio de 2004, el señor Madero Arboleda suscribió un acuerdo de garantía en el que se obligó a garantizar mancomunada y solidariamente las deudas presentes, pasadas y futuras de Costa Real con BBVA.

**Garantía otorgada por San Gerónimo Caribe Project**

Por otra parte, expuso que para garantizar la deuda de BBVA, San Gerónimo Caribe Project, otorgó una hipoteca por la suma de $1,000,000.00, por virtud de la Escritura Número 156 de 30 de diciembre de 2005 ante el notario Virgilio Ramos Tomasini, ampliada y modificada por la suma de $2,500,000.00, mediante la Escritura Número 7 de 24 de enero de 2007 ante el mismo Notario. BBVA enunció que la hipoteca original, así como su modificación gravaron un terreno y un estacionamiento comercial ubicado en San Juan, propiedad de San Gerónimo Caribe Parking.

**Garantía otorgada por Alturas del Bosque**

Señaló que el 17 de junio de 2004, Alturas del Bosque, Costa Real y BBVA suscribieron un *Subordinated Assignment and Security*

*Agreement*, mediante el cual Alturas del Bosque otorgó al BBVA un interés asegurado sobre seis (6) pagarés hipotecarios por las cantidades de $1,200,000.00, $1,010,000.00, $1,150,000.00, $11,040,000.00, $3,800,000.00 y $2,000,000.00, dados en prendas a Doral Bank.

BBVA esgrimió que, para finales del 2008, Costa Real incumplió con el pago del segundo préstamo de construcción. Afirmó que, tras realizar múltiples gestiones de cobro sin que se satisficiera la deuda, procedió a acelerarla. Indicó que al 12 de mayo de 2009, Costa Real y el señor Madero Arboleda adeudaban $22,806,264.20 de principal, $1,391,763.54 de intereses, los intereses acumulados hasta el pago total de la deuda y $2,248,000.00 por concepto de gastos, costas y honorarios de abogados. Por ello, solicitó al TPI que dicte sentencia para que se ejecuten las garantías y sus créditos accesorios otorgados por Costa Real, el señor Madero Arboleda, San Gerónimo Caribe Project, y Alturas del Bosque.

El 2 de julio de 2009, BBVA presentó una *Demanda enmendada* a los fines de eliminar la reclamación contra San Gerónimo Caribe Project y San Gerónimo Caribe Parking.[5]

Tras varios trámites procesales, el 14 de septiembre de 2009, el Consejo de Titulares del Condominio Costa Dorada solicitó intervención al TPI por ostentar interés propietario y créditos preferentes que se pudieran afectar por la disposición del caso.[6] Aseveró que en las parcelas B y C, gravadas mediante la segunda hipoteca otorgada por Costa Real, se construyó el Condominio Costa Dorada, el cual consta de ciento veintidós (122) apartamentos residenciales, los cuales BBVA los liberó de responder por la deuda. Sin embargo, el TPI denegó la intervención del Consejo de Titulares del Condominio Costa Dorada por constituir una dilación y complicación

---

[5] *Íd.*, Anejo 2, págs. 13-23.
[6] *Íd.*, Anejo 10, págs. 36-39.

innecesaria. Se recurrió ante este Tribunal y en el recurso KLCE200901757, un panel hermano denegó la expedición del auto de *certiorari* al concluir que el TPI no incidió en declinar la intervención.[7]

El 16 de diciembre de 2009, BBVA, Costa Real, el señor Madero Arboleda y Alturas del Bosque presentaron una *Estipulación para que se dicte sentencia.*[8] En esta, las partes acordaron que el TPI dicte sentencia contra Costa Real y el señor Madero Arboleda por la suma de $22,806,264.20 de principal, $1,391,763.54 de intereses, más los que se acumulen hasta el pago total y completo de la deuda, $2,248,000.00 de gastos, costas y honorarios de abogados, más $16,650.93 por gastos relacionados con el seguro *Hazard* y tasación. Además, que BBVA, como acreedor asegurado, podrá ejecutar hasta un máximo de $1,000,000.00 contra Alturas de Bosque. Asimismo, convinieron que, para satisfacer la sentencia, el TPI emitiera una orden de ejecución de sentencia. Las partes estipularon que el señor Madero Arboleda cooperaría para traspasar las facilidades comunales recreativas y vecinales, calles, planta de tratamiento de aguas y cisternas a las asociaciones de residentes de Costa Dorada, Costa Dorada II, Costa Azul y Costa Verde.

Así las cosas, el 7 de enero de 2010, el TPI emitió una *Sentencia*, la cual advino final y firme, en la que aceptó la estipulación efectuada entre BBVA, Costa Real, el señor Madero Arboleda y Alturas del Bosque. Declaró Con Lugar la *Demanda* y ordenó proceder con la ejecución hipotecaria.[9]

Posteriormente, el 9 de enero de 2015, el TPI emitió una *Orden* en la que declaró Ha Lugar la solicitud de CDJR Development, LLC (CDJR) en sustituir a BBVA.[10]

---

[7] *Íd.*, Anejo 11, págs. 40-45.
[8] *Íd.*, Anejo 12, págs. 46-69.
[9] *Íd.*, Anejo 13, págs. 70-71. Archivada y notificada en autos el 22 de enero de 2010.
[10] *Íd.*, Anejo 14, pág. 82. Archivada y notificada en autos el 30 de enero de 2015.

El 23 de febrero de 2015, el TPI emitió una *Orden de ejecución de sentencia y venta de bienes*, en la que autorizó la venta en pública subasta de las propiedades dadas en garantía por Costa Real.[11]

Posterior a expedirse el mandamiento de ejecución, el 14 de julio de 2015, se celebró un segundo acto de subasta, mediante el cual se adjudicaron las siguientes propiedades a favor de CDJR: Parcela A - *Water cistern and maintenance*, Parcela B, Parcela C, Parcela D - *Sanitary sewer pump station*, Parcela E - *Community facilities*, Parcela F - *Main avenue*, Remanente, Remanente I - *Costa Azul*, Remanente II, Remanente III, Remanente IV - *Costa Verde* y Remanente V - *Sanitary sewer pump station*.[12] En vista de lo anterior, el 7 de septiembre de 2016, el TPI emitió una *Orden* en la que confirmó el procedimiento de ejecución hipotecaria y la adjudicación de las propiedades a favor de CDJR.[13]

Tras varios años, el 12 de junio de 2023, la parte peticionaria solicitó intervención en el pleito.[14] Reiteró que la Parcela B, la Parcela C y el Remanente estaban excluidos del proceso de subasta dado que en la individualización y compraventa de los apartamentos, BBVA los liberó de los gravámenes hipotecarios. Alegó que las ventas judiciales se inscribieron en el Registro de la Propiedad, en contravención con la normativa jurídica registral inmobiliaria. Por todo ello, solicitó que el TPI aceptara su intervención como cuestión de derecho, ordenara la nulidad de la ejecución hipotecaria y venta judicial, ordenara al Registrador dejar sin efecto las inscripciones relacionadas con las propiedades adquiridas por CDJR, entre otros remedios.

En oposición a la solicitud de intervención, el 20 de octubre de 2023, CDJR sostuvo que la parte peticionaria solicitó intervención sin

---

[11] *Íd.*, Anejo 16, págs. 90-97. Archivada y notificada en autos el 2 de marzo de 2015.
[12] *Íd.*, Anejo 21, pág. 135.
[13] *Íd.*, Anejo, 26, págs. 149-151. Archivada y notificada en autos el 23 de septiembre de 2016. El 23 de marzo de 2017, el TPI enmendó la *Orden* a los fines de rectificar la suma por la cual se adjudicaron las propiedades a favor de CDJR.
[14] *Íd.*, Anejo 31, págs. 164-219.

acreditar el interés sobre las propiedades en controversia, es decir, que son titulares. Además, señaló que se peticionó la concesión de múltiples remedios contra una *Sentencia* dictada trece (13) años atrás, ejecutada hacía más de ocho (8) años y cuya venta judicial consta inscrita en el Registro de la Propiedad.[15] Sostuvieron que, pese a que el TPI y esta Curia apelativa negaron la intervención de la parte peticionaria en los años 2009 y 2010, en el 2015 tuvieron la oportunidad de nuevamente solicitar la intervención de terceros que reclaman bienes muebles e inmuebles embargados, predicada en la Regla 21.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 21.5. Por ello, razonó que la solicitud de intervención se tornó académica por ser tardía.

El 26 de octubre de 2023, TPI emitió una *Orden* en la que declaró Ha Lugar la oposición a la solicitud de intervención presentada por CDJR.[16]

Inconformes con la determinación del Foro Primario, el 17 de noviembre de 2023, la parte peticionaria solicitó reconsideración.[17] En esta, arguyó que acompañó los documentos acreditativos de la capacidad de los titulares de los apartamentos en Costa Dorada y Costa Dorada II y que CDJR era parte de ambos Consejos de Titulares, por lo que le consta que son personas con interés. Con respecto a la doctrina de academicidad reclamada por CDJR, adujo que está amparada en fraude.

En atención a lo anterior y examinada la oposición a la moción en reconsideración presentada por CDJR, el 23 de enero de 2024, el TPI declaró No Ha Lugar a la moción de reconsideración.[18]

---

[15] *Íd.*, Anejo 34, págs. 225-238.
[16] *Íd.*, Anejo 35, pág. 239. Archivada y notificada en autos el 2 de noviembre de 2023.
[17] *Íd.*, Anejo 36, págs. 240-255.
[18] *Íd.*, Anejo 39, pág. 260. Archivada y notificada en autos el 26 de enero de 2023.

En desacuerdo, la parte peticionaria compareció ante esta Curia apelativa mediante el presente recurso y le imputó al TPI la comisión de los siguientes cinco (5) errores:

1. ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE INTERVENCIÓN, CUANDO DEL PROPIO EXPEDIENTE DEL TRIBUNAL SURGE QUE SE VENDIERON LOS ELEMENTOS COMUNES DE LOS CONDOMINIOS DONDE LOS INTERVENTORES SON TITULARES, ACTO CONSTITUTIVO DE UNA INCAUTACIÓN, UN ACTO ILEGAL QUE PROVOCA LA NULIDAD ABSOLUTA DE LA SUBASTA JUDICIAL.

2. ERRÓ EL TPI AL AUTORIZAR LA VENTA DE ELEMENTOS COMUNES DE DOS CONDOMINIOS, INCLUYENDO LOS TERRENOS DONDE ENCLAVAN LAS ESTRUCTURAS QUE ALBERGAN LOS APARTAMENTOS Y DEMÁS SERVICIOS PARA LA COMUNIDAD, PUES LA LEY DE CONDOMINIOS LO PROH[Í]BE.

3. ERRÓ EL TPI AL PERMITIR LA VENTA JUDICIAL DE UNA CALLE PÚBLICA, CUYA SEGREGACIÓN CONSTA EN EL REGISTRO DE LA PROPIEDAD, Y CONSTITUYE PROPIEDAD PÚBLICA O TAL ES LA EXPECTATIVA, POR ASÍ REQUERIRLO EL DERECHO, PROVOCANDO QUE LOS APARTAMENTOS QUEDASEN ENCLAVADOS.

4. ERRÓ EL TPI AL PERMITIR Y VIABILIZAR UNA SUBASTA PÚBLICA JUDICIAL DE PROPIEDADES QUE ESTABAN EXCLUIDAS DE LA SENTENCIA, Y LAS CUALES NO PERTENECÍAN AL DEUDOR, COSTA REAL, POR CUANTO LAS HABÍA VENDIDO EN PARTICIPACIONES O CUOTAS INDIVISAS, Y EN CADA VENTA EL ACREEDOR, BBVA, LIBERÓ LA PARTICIPACIÓN INDIVISA QUE, POR LEY, ES INHERENTE AL CONCEPTO DE PROPIEDAD REAL EN MATERIA DE CONDOMINIOS.

5. ERRÓ EL TPI AL NEGAR LA INTERVENCIÓN AUN CUANDO DEL RÉCORD DEL EXPEDIENTE JUDICIAL, SURGE QUE AUTORIZÓ LA VENTA DE PROPIEDAD INMUEBLE, CUYA TITULARIDAD PERTENECE A UN CONGLOMERADO DE COTITULARES, DENOMINADOS COPROPIETARIOS O CONDÓMINOS EN MATERIA DE CONDOMINIOS, HECHO CLARAMENTE EXPUESTO EN LA ESTIPULACIÓN DE 23 FOLIOS, QUE FUE INCORPORADA ÍNTEGRAMENTE EN LA SENTENCIA, POR LO CUAL, LA ESTIPULACIÓN ERA LA GUÍA JURÍDICA, EL DOCUMENTO VINCULANTE QUE DEBIÓ OBSERVAR EL TPI PARA CUALQUIER AUTORIZACIÓN DE VENTA JUDICIAL, EN ESTE PARTICULAR CASO.

En apoyo a su contención, la parte peticionaria esgrimió que el TPI no podía autorizar la venta de las calles ni de los elementos comunes de los condominios. Por otra parte, estableció que la finca Remanente les pertenece a los titulares de los apartamentos de cada condominio. Por ello, nos solicitó revocar al Foro Primario y ordenar la intervención de la parte peticionaria como cuestión de derecho. Asimismo, nos peticionó ordenar la nulidad de la ejecución y venta

judicial de las fincas, ordenar al Registrador de la Propiedad que tome razón de la nulidad y que se anote la nulidad en todas las inscripciones.

Por su parte, el 19 de marzo de 2024, CDJR presentó su oposición a la expedición del auto de *certiorari*. En esta, esbozó que la parte peticionaria nos planteó cuestiones académicas, atinentes a determinaciones judiciales que advinieron finales y firmes, emitidas hacen más de una década. Por otro lado, argumentó que esta Curia apelativa carece de jurisdicción para atender este recurso debido a su falta de perfeccionamiento. Estableció que la parte peticionaria omitió incluir la copia ponchada sobre la moción de reconsideración presentada ante el TPI, sin colocar a este Tribunal en posición de determinar si dicha moción se radicó oportunamente. Asimismo, adujo que la parte peticionaria prescindió de incluir una copia de la notificación del archivo en autos de la *Orden* que el TPI emitió el 23 de enero de 2024, en la que denegó su solicitud de reconsideración. Por ello, sostuvo que este Tribunal está impedido de conocer si el recurso se presentó dentro del término jurisdiccional para recurrir ante esta Curia apelativa.

En torno a los méritos del recurso, CDJR aseveró que el derecho de intervención de terceros que reclaman bienes muebles e inmuebles embargados, al amparo de la Regla 21.5 de Procedimiento Civil, *supra*, R. 21.5, se diferencia de este caso dado que sólo está disponible previo a ejecutarse una sentencia. De esta manera, CDJR esgrimió que la solicitud de intervención de la parte peticionaria resulta ser tardía. Por consiguiente, solicitó que esta Curia apelativa se abstenga de dilucidar en sus méritos las controversias planteadas por la parte peticionaria.

En virtud de los errores planteados y los argumentos de ambas partes, ilustramos la normativa jurídica aplicable.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[19] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.***, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.***, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, debemos pasar entonces a un

---

[19] Esta Regla dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[20] Dichos criterios esbozados en la Regla 40 del Reglamento de este Tribunal, *supra*, R. 40, cimentarán la determinación de esta Curia apelativa sobre la expedición de un auto de *certiorari* al recurrirse de un dictamen atinente a asuntos post-sentencia, puesto que, de otro modo, no sería revisable. Véase ***IG Builders et al. v. BBVAPR***, *supra*, en la pág. 339.

**B.**

La intervención es un mecanismo procesal regido por la Regla 21 de Procedimiento Civil, *supra*, R. 21. Por virtud de la intervención, se faculta que una tercera persona, voluntariamente o por necesidad, solicite ser incluida en una acción judicial previamente presentada. ***IG Builders et al. v. BBVAPR***, *supra*, en la pág. 320; J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, Tomo II, 2011, pág. 779. Este mecanismo procesal

---

[20] Esta Regla dispone lo siguiente:
    El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
    (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
    (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
    (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
    (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
    (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
    (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
    (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

no crea derechos sustantivos ni una causa de acción a favor de la persona solicitante, sino que la autoriza a presentar una reclamación o defensa que, de permitirse, se convierte en una parte del caso para fines de dicha reclamación o defensa. J. A. Cuevas Segarra, *op. cit.*; ***Rivera Schatz v. ELA y C. Abo PR I***, 191 DPR 470, 477 (2014).

Si bien las disposiciones atenientes a la intervención deben interpretarse liberalmente para permitir que intervenga una tercera persona que tenga múltiples intereses en un litigio, no significa refrendar su uso irrestricto. ***IG Builders et al. v. BBVAPR***, *supra*, en la pág. 321; ***Chase Manhattan Bank v. Nesglo, Inc.***, 111 DPR 767, 769 (1981). Por ello, la aplicación del mecanismo de intervención es de índole pragmático dado que depende de la armonización entre el interés de la economía procesal en solucionar varias cuestiones relacionadas en un solo pleito y el interés de evitar que los pleitos se compliquen y eternicen innecesariamente. ***Chase Manhattan Bank v. Nesglo, Inc.***, *supra*, en la pág. 770; ***SLG Ortiz-Alvarado v. Great American***, 182 DPR 48, 80 (2011). Al evaluar una solicitud de intervención, primero se debe analizar si existe un interés que amerite protección y, segundo, si ese interés se afectaría por la ausencia de intervención. ***SLG Ortiz-Alvarado v. Great American***, *supra*. De este modo, la tercera persona que interesa intervenir en un pleito debe exponer los fundamentos que justifican su intervención en el procedimiento. ***IG Builders et al. v. BBVAPR***, *supra*, en la pág. 322. No obstante, contrario a la normativa federal, no es necesario que la tercera persona exponga que sus intereses no están representados adecuadamente. ***Chase Manhattan Bank v. Nesglo, Inc.***, *supra*, en la pág. 769. Además, al denegarse la intervención de una tercera persona, esta no se considera parte, por lo que no tiene derecho a interponer un recurso de apelación contra la sentencia que se dicte finalmente en el caso. ***Vélez v. Doe***, 79 DPR 643, 646-647 (1956).

Por otro lado, existen dos modalidades de intervención en un procedimiento civil: la intervención como cuestión de derecho o la intervención permisible. Como cuestión de derecho, mediante una oportuna solicitud, una tercera persona tendrá derecho a intervenir en un pleito en las siguientes eventualidades:

> (a) cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir o
> (b) cuando la persona solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pueda, de hecho, quedar afectado con la disposición final del pleito. Regla 21.1 de Procedimiento Civil, *supra*, R. 21.1.

Dado que la intervención como cuestión de derecho está relacionada con la legitimación activa o pasiva, es importante destacar que se requiere que la tercera persona plantee un derecho que se pueda afectar con la disposición del pleito. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. ed., San Juan, Lexisnexis de Puerto Rico, 2017, pág. 179.

Una de las instancias en las cuales se permite la intervención como cuestión de derecho responde durante el procedimiento de ejecución de un bien embargado. Pues, en esta eventualidad se permite que la persona interventora salvaguarde los derechos atinentes a la propiedad que se pretende embargar o que está sujeta a algún dictamen judicial para responder por una sentencia. ***IG Builders et al. v. BBVAPR***, *supra*, en las págs. 330-331. A saber, el máximo foro judicial estableció lo siguiente:

> La intervención solicitada conforme la Regla 21.5 [de Procedimiento Civil, *supra*, R. 21.5], al igual que el procedimiento de tercería, van dirigidos ya sea a levantar un embargo trabado por una orden judicial o a detener la ejecución de una sentencia a base de los derechos reclamados por el interventor sobre la propiedad afectada. Resulta axiomático, por lo tanto, que dicha regla es de aplicación, inclusive en casos donde se haya dictado sentencia en el pleito y en el que se pretende intervenir. *Íd.* en las págs. 332-333.

En concreto, la referida Regla 21.5 de Procedimiento Civil dispone lo siguiente:

> Siempre que un alguacil o una alguacila proceda a cumplimentar una orden de ejecución, de embargo o de cualquier otra orden contra alguna propiedad mueble o inmueble, y dicha propiedad o cualquier parte de ella, o algún

interés en ella, sea reclamada por un tercero, éste tendrá derecho a presentar una demanda de intervención. El procedimiento de intervención relacionado con bienes muebles e inmuebles se regirá por estas reglas. Regla 21.5 de Procedimiento Civil, *supra*, R. 21.5.

Por otra parte, mediante una oportuna solicitud, se podrá permitir que una tercera persona intervenga en un pleito:

(a) cuando por ley se le confiera un derecho condicional a intervenir o
(b) cuando la reclamación o defensa de la persona solicitante y el pleito principal tengan en común una cuestión de hecho o de derecho.
Cuando una parte base su reclamación o defensa en cualquier ley u orden ejecutiva cuya ejecución está a cargo de un funcionario o una agencia gubernamental, o en un reglamento, una orden, un requerimiento o un acuerdo promulgado, expedido o celebrado de acuerdo con dicha ley u orden ejecutiva, el tribunal ordenará a dicha parte que notifique fehacientemente la reclamación o defensa al funcionario, funcionaria o agencia y podrá permitírsele al funcionario, funcionaria o agencia intervenir en el pleito mediante una solicitud oportuna. Al ejercer su discreción, el tribunal considerará si la intervención dilatará indebidamente el pleito o perjudicará la adjudicación de los derechos de las partes originales. *Íd.*, R. 21.2.

Ahora bien, ya sea en una intervención como cuestión de derecho o permisible, la solicitud de intervención debe ser oportuna. J. A. Cuevas Segarra, *op. cit.*; **Compañía de Fianzas v. Tribunal Superior**, 100 DPR 169, 170 (1971). En tal sentido, ordinariamente, una solicitud de intervención post-sentencia se percibe con recelo, puesto que puede perjudicar los intereses de las partes originales o interferir sustancialmente con los procesos ordinarios en el tribunal. **Compañía de Fianzas v. Tribunal Superior**, *supra.* Empero, la intervención post-sentencia procede cuando es la manera más eficaz de proteger los derechos de la persona interventora que quedará obligada por la disposición del pleito. **Gerena v. Lamela**, 79 DPR 578, 580-581 (1956).

En nuestro ordenamiento jurídico es limitada la concesión de la solicitud de intervención post-sentencia en un procedimiento de subasta, venta y adjudicación de bienes para hacer efectivo un crédito. **Rigores v. Registrador**, 165 DPR 710, 724 (2005); **Atanacia Corp. v. J.M. Saldaña, Inc.**, 133 DPR 284, 294 (1993). Esto, dado que, a

diferencia de la etapa contenciosa, la etapa ejecutiva de una subasta, venta y adjudicación de bienes corresponde al alguacil o alguacila del tribunal y al acreedor ejecutante. *Íd.*

Considerando la normativa jurídica previamente esbozada, nos encontramos en posición para resolver.

## IV.

En el presente caso, la parte peticionaria señaló que el TPI incidió al denegar la solicitud de intervención en una etapa post-sentencia de un pleito cuya ***Sentencia* se dictó alrededor de catorce (14) años atrás, la cual advino final y firme y se ejecutó alrededor de nueve (9) años atrás**. Tras analizar la totalidad del expediente, a tenor con la normativa jurídica previamente pormenorizada y la Regla 40 del Reglamento de este Tribunal, *supra,* R. 40, debemos abstenernos de ejercer nuestra función revisora. Cónsono con la sabia discreción que debemos ejercer al expedir un recurso de *certiorari,* no atisbamos elemento alguno que amerite que ejerzamos nuestra facultad revisora. La determinación recurrida es correcta en derecho, por consiguiente, no debemos intervenir con el criterio del Foro Primario. Adviértase que el presentar una solicitud de intervención en el pleito, después de casi quince (15) años de dictada la *Sentencia* y después de alrededor de nueve (9) años de que fue ejecutada, no es el mecanismo adecuado.

En mérito de lo anterior, procedemos a denegar la expedición del auto de *certiorari.*

## V.

Por los fundamentos antes expuestos, se *deniega* la expedición del auto de *certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones